## JEFFERSON v. GALLAGHER *et al.*

No. 4988.  Opinion Filed July 20, 1915.

Third Application for Rehearing Denied March 21, 1916.

(150 Pac. 1071.)

1.  **INFANTS—Property and Conveyances—Statutes.** Under the statutes of Arkansas, in force in the Indian Territory on the 2d day of March, 1906, a male person under the age of 21 years was incompetent to mortgage, convey, or otherwise dispose of, or make any contract relating to, real estate, or any interest therein.

2.  **INFANTS—Process—Statutes.** Section 5611, Comp. Laws 1909, being section 4721, Rev. Laws 1910, provides that: "When the defendant is a minor, under the age of fourteen years, the service must be upon him and upon his guardian or father, or if neither of those can be found, then upon his mother, or the person having the care or control of the infant, or with whom he lives. If neither of these can be found, or if the minor be more than fourteen years of age, service on him alone will be sufficient. The manner of service may be the same as in the case of adults."

3.  **SAME—Issuance and Service of Summons—Waiver by Minor.** An infant cannot waive issuance and service of summons, nor can any person, not even his guardian, do it for him. In all cases where personal service upon an infant is required, he cannot waive such service, nor can his guardian or guardian **ad litem,** or his attorney, waive it for him, nor can any person appear for an infant until he is brought into court, according to law. Under section 5567, Comp. Laws 1909, (sec. 4688, Rev. Laws 1910), the defense of an infant must be made by a guardian for the pending suit, who may be appointed by the court in which the action is prosecuted, or by the judge thereof, or by a county judge; but the appointment cannot be made until after the service of the summons in the action has been made upon such minor, as provided by law.

4.  **JUDGMENT—Requisites—In General.** The first fundamental requisite to the validity of a judgment is that it should have been rendered by a court having jurisdiction, for without jurisdiction the courts can do nothing, and a judgment rendered without jurisdiction is a mere nullity. The jurisdiction required is of three sorts: (1) Jurisdiction of the parties; (2) jurisdiction of the general subject-mater; (3) jurisdiction of the particular matter which the judgment professes to decide.

Jefferson v. Gallagher et al.

5.  **SAME—Validity—Jurisdiction of Person.** A judgment rendered without jurisdiction of the person is no judgment at all; it is a mere nullity. It is attended by none of the consequences of a valid adjudication, nor is it entitled to the respect accorded to one. It can neither affect, impair, nor create rights. As to the person against whom it professes to be rendered, it binds him in no degree whatever. As to the person in whose favor it professes to be, it places him in no better position than he occupied before, and gives him no new right. As to third persons, it can neither be a source of title nor an impediment in the way of enforcing claims. It is not necessary to take any steps to have it reversed, vacated, or set aside, and whenever it is brought up against the party, he may assail its pretentions and show its worthlessness. It is supported by no presumptions, and may be impeached in any action, direct or collateral. It is a judgment which is entirely void, and may be shown to be void in a collateral as well as in a direct proceeding, by extrinsic evidence as well as by the record itself.

6.  **SAME—Direct Attack—Fraud.** The petition in this case alleges that two certain judgments in the district court of Grady county numbered, respectively, 2024 and 2025, were procured by fraud on the part of the plaintiffs therein, in that the defendant, Albert Harrison, was then a minor under the age of 18 years, and at the time had a duly appointed, qualified, and acting guardian, and that no service was had on said Albert Harrison, or his said guardian, but an attempted acceptance of service by Albert Harrison was filed, in which the facts set forth in the petition of plaintiff were alleged to be true, but which judgments were erroneous, irregular, obtained by fraud, and should be vacated and set aside. **Held,** that said action, under the language of said petition, and as shown by the records in the case, is a direct attack upon said judgments referred to therein.

(Syllabus by Robberts, C.)

*Error from District Court, Grady County;*
*Frank M. Bailey, Judge.*

Action by Layson Jefferson, a minor, suing by and through W. C. Allen, his guardian, against J. H. Gallagher and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

*C. S. Arnold,* for plaintiff in error.

*Bond, Melton & Melton* and *Babcock & Trevathan,* for defendants in error.

Opinion by ROBBERTS, C.  This case was commenced in the district court of Grady county, in the month of December, 1911, by the plaintiff in error, against the defendants in error, to cancel and set aside two judgments, and certain conveyances, and to quiet title to certain lands, formerly Indian allotments of the Choctaw and Chickasaw Nations, the allottee being a full-blood Choctaw.

The plaintiff in his petition, after the customary allegations as to residence and jurisdictional matters, alleges: That he is the owner of certain lands involved in this action and fully described in said petition; which lands were allotted to Charlie Harrison, now deceased; that as sole heir of Albert Harrison, deceased, Layson Jefferson, who is a half-brother of Albert Harrison, became the owner in fee simple of said lands at the death of the said Albert Harrison, who died intestate, without issue, and without having been married, on or about the 20th day of May, 1909; that on or about the 1st day of June, 1909, the defendants, or some of them, unlawfully entered into possession of the said lands, and have ever since unlawfully withheld possession thereof from the plaintiff, to his damage in the sum of $500, and have used the rents and profits arising therefrom to their own use and benefit, and to plaintiff's damage in the sum of $500; that on the 20th day of May, 1909, the day of the deeds are now of record in Grady county, Okla., which deeds mentioned as being dates upon which Albert Harrison was in any wise connected with the defendants, or any of them, the said Albert Harrison was a minor; that on the 2d day of March, 1906, the defendants Gallagher

and Erwin procured from Albert Harrison and his step-mother, Awachima Harrison, deeds to said lands, which deeds are now of record in Grady county, Okla., which deeds are wholly void, for the reasons that said grantors were enrolled as full-blood Choctaw Indians, the consideration paid was less than the appraised value of said land, and the grantor, Albert Harrison, was but 15 years of age, and that Awachima Harrison had but a dower interest therein, and Awachima Harrison is now dead; that on the 21st day of October, 1907, defendants Gallagher and Erwin, joined by their wives, executed to defendant Hill a warranty deed for said lands; that on the 14th day of May, 1909, in two certain causes then pending in the district court of Grady county, Okla., numbered, respectively, 2024 and 2025, in which causes J. T. Erwin and J. H. Gallagher were respectively plaintiffs and Albert Harrison was defendant, judgments were rendered in favor of said plaintiffs and against Albert Harrison, quieting the title to said lands in the said plaintiffs in said causes, which judgments were procured by fraud on the part of the successful plaintiffs, in that the said Albert Harrison was then a minor under the age of 18 years, and then had a duly appointed, qualified, and acting guardian; that no service was had on said Albert Harrison or his said guardian, but an attempted acceptance of service by Albert Harrison was filed, in which the facts set forth in the petitions of plaintiffs were alleged to be true, but which judgments were erroneous, irregular, obtained by fraud, and should be vacated and set aside; that on the 27th day of May, 1909, the defendant Coley executed a deed to Frank E. Parke, which deed is void for the reason that said Coley never had any interest in said land; that

on July 3, 1909, said Parke executed to defendant Hill a quitclaim deed to said land; that the said Hill thereafter by warranty deeds undertook to convey said lands to defendant Vickrey, and on September 29, 1909, defendants Coley and Jackson executed to Vickrey deeds to said land, which deeds were approved by the county judge of Haskell county, Okla., but said deeds are void for the reason said Coleys and Jackson had no interest in the land; that on October 22, 1909, defendant Vickrey executed his warranty deed to a portion of said land to defendant John Benda, and on February 7, 1910, defendants John and Anna Benda executed to Vickrey a mortgage thereon; that on June 1, 1909, said Vickrey sold the remaining portion of said land to Cinthyann D. Smith, and on the same day defendants Cinthyann D. and Charles P. Smith executed mortgages thereon to Vickrey, which said mortgages were by Vickrey assigned to J. E. Shirk; that each and every one of said deeds, judgments, and mortgages are void, for the reason that the same were in violation of the statutes of the United States, and were taken from and against Albert Harrison, a minor, who died before attaining his majority; that said instruments cast a cloud upon the title of plaintiff to said lands, and plaintiff prays for the title and possession of said land, damages, and that each and all of said deeds, judgments, and mortgages be vacated, set aside, and held for naught, and that plaintiff's title to said land be quieted.

### Answers.

On January 13, 1912, defendant Vickrey filed his separate answer, in which he denies each and every allegation in the petition, except such as should be expressly admitted, and alleges in effect as follows: That defend-

ants Gallagher and Erwin received the deeds from Albert Harrison as alleged in the petition, execution of deed by Gallaghers and Erwins to Hill, and the rendition of the judgments in causes 2024 and 2025 as set out in petition, on May 14, 1909, but charged that at said date Albert Harrison was not a minor; that said judgments were not obtained by fraud; that said court had jurisdiction, and that said judgments were not appealed from, and are valid and final judgments as to all matters adjudicated therein and same are pleaded as a complete bar to the matters and things alleged in plaintiff's petition. Said answer admits the execution of the various deeds and mortgages alleged in the petition, and that said land was allotted to Charlie Harrison, and that Albert Harrison inherited said land as sole heir of Charlie Harrison. Said defendant further alleges that he purchased said lands from defendant Hill, and paid him therefor $2,500 on June 1, 1909, and $4,500 on October 22, 1909; that said Hill warranted the title to said land, and should plaintiff prevail, then defendant Vickrey prays judgment against defendant Hill for the sums aforesaid, with interest thereon from said dates at the rate of 10 per cent. per annum, costs, and attorney's fees. He further alleges that on September 29, 1909, the defendants Coley and Jackson executed to him a warranty deed to said land in consideration of $400, and that should plaintiff prevail, he is entitled to judgment against said last-named defendants for said sum of $400, interest, costs, and attorney's fees. He prays that plaintiff take nothing, but that if plaintiff should recover, then that he have judgment against his codefendants as above shown.

On January 13, 1912, defendants Cinthyann D. Smith and Charles P. Smith filed their separate answer, denying each and every allegation contained in the petition, except such as are expressly admitted. They admit that said land was allotted to Charlie Harrison; that Charlie Harrison is dead; that Albert Harrison was the sole heir of Charlie Harrison, and that Albert Harrison died on May 20, 1909; that Albert Harrison deeded said land to Gallagher and Erwin, who deeded to Hill, who deeded to Vickrey, and that Vickrey executed to these defendants a warranty deed, and urge that should plaintiff prevail, they are entitled to recover against Vickrey the sum of $407, interest, costs, and attorney's fees. They further specially plead the judgments set out in the petition and answer of defendant Vickrey.

On January 23, 1912, the defendants John and Anna Benda filed their separate answer, denying all allegations not specifically admitted. They admit that Albert Harrison was the sole heir of Charlie Harrison; allege the execution of deeds from Albert Harrison to Gallagher and Erwin, by Gallagher and Erwin to Hill, by Hill to Vickrey, and by Vickrey to John Benda; plead the judgment in cause No. 2024, attacked by plaintiff; allege improvements made in good faith, and allege that Vickrey is liable on his warranty to them in the sum of $4,900, paid for said lands, and $1,065 for improvements made in good faith, interest, costs, and attorney's fees; and pray judgment.

On March 7, 1912, the defendant J. E. Shirk filed his separate answer, denying all allegations not specifically admitted; admitting the execution of the various deeds and mortgages; alleging that he is the owner and holder of

said mortgages, and that same are valid and subsisting liens; specially pleading the judgments attacked in plaintiff's petition; pleading estoppel and improvements; and praying judgment.

On March 12, 1912, defendants H. L. and Margaret Hill filed their separate answer, denying all allegations not specifically admitted; admitting the execution of the deeds alleged in the petition; pleading specially the judgments attacked in the petition; and alleging that the title to said land was warranted to them by the defendants Gallagher and Erwin; and praying for judgment over against the warrantors in the event plaintiff should prevail, for amount paid, interest, costs, and attorney's fees.

### Separate Answer of Defendants J. H. Gallagher and Della Gallagher.

On March 12, 1912, the defendants J. H. Gallagher and Della Gallagher filed their separate answer, denying each and every allegation not specifically admitted; admitting the execution of certain of the deeds described in the petition, and specially pleading the judgments attacked in said petition and alleging same are a bar to this action, and praying for judgment quieting title.

### Disclaimer of Defendant Frank E. Parke.

On September 23, 1912, the defendant Frank E. Parke filed a disclaimer, wherein he disclaims any right, title, or interest in said land, and asks to be discharged with his costs.

### Separate Answer of Mary Arthur, Lizzie Kaler, and Cassie Vance, as Executrices of J. E. Shirk, Deceased.

On October 25, 1912, Mary Arthur, Lizzie Kaler, and Cassie Vance, as executrices of the estate of J. E. Shirk,

deceased, filed their separate answer, which is in effect the same answer filed by said J. E. Shirk on March 7, 1912.

## Replies.

Subsequently, after certain proceedings not material to this review, the plaintiff filed replies to each of said answers, denying each and every allegation of new matter contained in said answers, and alleging that the judgments specially pleaded were absolutely void for want of jurisdiction.

The issues being joined by the pleadings above outlined, upon October 25, 1912, the trial of the cause was begun, and the following is a synopsis of the evidence introduced:

It is stipulated and agreed that the land in question was allotted to Charlie Harrison, and that said Charlie Harrison died in 1904, and that Albert Harrison, who is enrolled opposite No. 8339, was the only child of Charlie Harrison, deceased. and that Albert Harrison and his stepmother were the sole heirs at law of said Charlie Harrison, deceased, and that both of said parties are now dead, and died prior to the filing of this suit.

## Plaintiff's Evidence.

Plaintiff first introduced the census card and roll card of the said Albert Harrison, showing the said Albert Harrison to have been 11 years of age on September 25, 1902. Plaintiff then introduced in evidence the request of said Albert Harrison for the appointment of Jerry Folsom as his guardian, and the letters of guardianship issued February 1, 1909.

Witness Griggs Durant (by deposition): Witness is 48 years of age; lives at McCurtain, Okla.; is a Choctaw Indian; knew Charlie Harrison and his son Albert Harrison; and knows that Albert Harrison was about 17 years of age at the time of his death.

Witness Louisa Hunt (by deposition): Witness is 55 years of age, lives at McCurtain, Okla., and is a Choctaw Indian; knew Albert Harrison and his father and mother, all three of whom are now dead; knew that Albert Harrison had but one brother living, who is the plaintiff, Layson Jefferson; and knows that on the 20th day of May, 1909, the day Albert Harrison died, he (Albert Harrison) was about 17 years of age, and knows the age by reason of the fact that when witness started to McAlester in 1893 to collect Choctaw payment, Albert Harrison was not yet born, but upon her return he was born, his birth having occurred during her absence.

Witness Arbin Johnson (by deposition): Witness is 39 years of age; lived at McCurtain, Okla.; knew Albert Harrison and his father and mother; knows that Albert Harrison has one brother living, Layson Jefferson; knows that at the date of the death of said Albert Harrison he, the said Albert Harrison, was about 16 years of age, and that his death occurred on May 20, 1909; knows Albert Harrison's age from the fact that when witness received his payment of $103, he went to the home of Charlie Harrison, who borrowed $10 from witness to buy some things for Albert Harrison, who had just been born; that Albert Harrison was about 13 or 14 years of age when he sold his interest in the lands of Charlie Harrison, and that all that was paid to Albert Harrison therefor was a horse, saddle, and bridle and some clothes;

that Albert Harrison had a guardian at the time of his death.

Witness Stephen Jefferson (by deposition) :  Witness is 39 years of age; lives at Lodi, Okla.; is father of the plaintiff, Layson Jefferson, and was stepfather of Albert Harrison, deceased; witness enrolled the said Albert Harrison, and had his age given as it was told him by Albert Harrison's mother; knows that on May 20, 1909, Albert Harrison was 16 or 17 years old; knows that there was paid to Albert Harrison, for his interest in the allotment of Charlie Harrison, a horse, saddle, and bridle and some clothes; knows that Albert Harrison was about 15 years of age when he made deed to the Charlie Harrison land; that Albert Harrison and Layson Jefferson are sons of the same mother.

Witness Sweeney McGee (by deposition) :  Witness is 30 years of age; resides at McCurtain, Okla.; knew Albert Harrison and Charlie Harrison; knew that Charlie Harrison was the father of Albert Harrison; that Albert Harrison died May 20, 1909, and that at the time of his death he was about 16 years old; that Albert Harrison had a guardian at the time of his death.

Plaintiff then introduced the letters of guardianship of W. C. Allen as guardian of Layson Jefferson. Plaintiff then introduced the deed attached to answer of defendant from Albert Harrison *et al.* to J. T. Erwin, and especially that part of same showing consideration, $500, and certified copy of stub of allotment certificate issued to Charlie Harrison, showing that the same is the surplus allotment of Charlie Harrison, and the lands are appraised at $520, and the sworn petition of J. T. Erwin, in case of J. T.

Erwin v. Albert Harrison, wherein he alleged the consideration paid for said land was $500.

Witness Joe Jackson: Witness is 32 years of age; knew Albert Harrison and was interpreter at time Albert Harrison executed deed to Gallagher; Albert Harrison sold the allotment of Charlie. Harrison to said Gallagher, and was paid therefor a horse, saddle, and bridle; witness was a cousin to Albert Harrison, and knew the age of Albert Harrison, and at the time he sold the land he was about 15 years of age. On cross-examination: Witness was three miles east of Lodi when Albert Harrison was born, and was 10 or 11 years old at that time; does not know whether Albert Harrison had a part of his allotment in the Choctaw Nation; does not know whether it was a part of the land in Choctaw Nation; had Charlie Harrison's certificates; don't know how much Gallagher paid Albert Harrison, of his own knowledge.

Witness Will Coley: Witness is 32 years old, lives at Red Oak, Okla., and was a cousin of Albert Harrison; Layson Jefferson and Albert Harrison are half-brothers; Albert Harrison was about 18 years old at the time of his death. Cross-examination: Albert Harrison was born at Jim Brandy's, 15 miles from Lodi, and witness' mother went over there when Albert Harrison was born, at which time witness was 11 years old; witness says Albert Harrison was born in 1891; that witness' father had some books at home, and told witness that Albert was born in 1891.

Plaintiff then offered in evidence the original petition in cause No. 2025, J. H. Gallagher, Plaintiff, v. J. T. Erwin and Albert Harrison. Plaintiff then offered in evidence the deeds under which the defendants in this action claim title.

### Demurrer to Evidence.

The defendants then demurred to the evidence on the grounds that the petition of the plaintiff herein pleads a certain judgment rendered in causes Nos. 2024 and 2025 of that court rendered in 1909, and the pleadings in said cause, which pleadings show upon their face that such judgment is valid and binding and in force, and that same has never in any way been modified or vacated, and that said proceedings and judgment further show that the same issues now sought to be adjudicated in this case were adjudicated and settled by the judgment in the cases referred to and pleaded by the said plaintiff, and is conclusive and a part of the plaintiff's cause of action in this case, and there has been no evidence competent to affect the validity of said judgment. Which demurrer was by the court sustained. The plaintiff in due time filed his motion for new trial.

### Motion for New Trial.

This motion was based on the following grounds, namely: First. That the decision and judgment of the trial court is not sustained by sufficient evidence, and is contrary to law. Second. Errors of law occurring at the trial and excepted to by the plaintiff at the time. Third. Error of the court in sustaining the demurrer to the evidence of plaintiff. This motion was overruled by the court, and exceptions were duly saved by the plaintiff. For the purpose of this review the first and third grounds for new trial alone are relevant.

### Judgment.

On October 25, 1912, the court rendered judgment that plaintiff take nothing, and that the title to the por-

tion of said land as set up in said answers be quieted in the holders thereof. The plaintiff was allowed an extension of time in which to perfect appeal, and the case is now brought to this court upon an appeal from the action of the trial court in sustaining the demurrer to the evidence, rendering judgment for defendants, and overruling the motion of plaintiff for a new trial as above set out.

### Assignments of Error.

(1) Said court erred in sustaining the demurrer to the evidence of plaintiff in error. (2) Said court erred in rendering judgment for defendants in error. (3) Said court erred in overruling the motion of plaintiff in error for new trial. (4) Said court erred in not rendering judgment for plaintiff in error.

The four assignments of error will be considered together, for the reason that they all go to the same question, and a ruling upon any one of them would have practically the same result as to all the others. The demurrer to the evidence admits the existence of the facts which the testimony tends to establish, and therefore submits for decision only questions of law, based upon the facts pleaded and admitted: The fact that Albert Harrison was the sole heir of Charlie Harrison, the allottee of the land involved; that he was only 15 years of age at the time he conveyed it to J. H. Gallagher and J. T. Erwin; that he was not more than 18 years of age when the decrees quieting title, referred to in plaintiff's petition as causes Nos. 2024 and 2025, were entered; that no service of summons in said cases was had upon him, nor his guardian, nor any other person as required by law, and that the only means of obtaining jurisdiction of him in said cases was the appearance of an attorney by filing an answer pretend-

ing to admit that Albert was 21 years of age at the time
the deeds were made, and confessing judgment against
him; that the land was worth from $3,000 to $5,000; and
that the grantees gave the boy a horse, saddle and bridle,
and some clothes for the land.   All these facts are ad-
mitted; and we might say they were proven beyond all
reasonable doubt.   This leaves three questions of law to
be settled by this court, viz:

1.   Were the deeds to the land in controversy, made
by Albert Harrison to J. H. Gallagher and J. T. Erwin,
on the 2d day of March, 1906, at a time when he was only
15 years of age, valid and binding conveyances of the
land?

2.   Were the decrees rendered in the cases Nos.
2024 and 2025, in the district court of Grady county, on
the 14th day of May, 1909, at a time when Albert Harrison
was only 18 years of age, and without service of sum-
mons upon him or his guardian, or any other person, valid
and binding as to the interested defendants herein or any
of them?

3.   Can the validity of said decrees be attacked in
this proceeding?

The question as to the validity of the deeds made by
Albert Harrison, at a time when he was only 15 years
of age, needs no argument; they were illegal and inef-
fective in the attempt to procure title to the land.   It will
be borne in mind that the demurrer to the evidence admits
that Albert died when he was only 18 years of age.
Further discussion of this question is unnecessary.

The next question to be disposed of is as to the va-
lidity and effect of the decrees, and thereby the want of

service upon, and jurisdiction of, the person of the minor, Albert Harrison. The record shows that the petitions and answers in both these cases, Nos. 2024 and 2025, were filed the same day, and apparently at the same time, and no other or further service was had. Section 5611, Comp. Laws 1909, being section 4721, Rev. Laws 1910, provides:

"When the defendant is a minor, under the age of fourteen years, the service must be upon him and upon his guardian or father, or if neither of those can be found, then upon his mother, or the person having the care or control of the infant, or with whom he lives. If neither of these can be found, or if the minor be more than fourteen years of age service on him alone will be sufficient. The manner of service may be the same as in the case of adults."

This section came from Kansas, and many years ago the Supreme Court of that state, in *Armstrong v. Wyandotte Bridge Co.*, 1 Kan (2d Ed.) 576, laid down the rule of practice, which has ever since been maintained, that "infants cannot be brought into court without being duly served."

One of the latest expressions of the courts on this subject is found in *Boling v. Campbell*, 36 Okla. 677, 128 Pac. 1093, as follows:

"From a consideration of the foregoing, it is apparent that no proper or legal service of summons was had upon the minors in this case, and it goes without saying that an infant cannot waive issuance and service of summons; nor can any person, not even his guardian, do so for him. An adult can waive jurisdiction of his person, and will do so if he appears in court and pleads to the merits; but with an infant it is different, and in a case where personal service upon an infant is required, such as the one at bar, he cannot waive such service; nor can

his guardian or guardian *ad litem*, or his attorney, waive it for him.  10 Ency. Pl. & Pr. 612; 22 Cyc. 681.  Nor can any person appear for an infant until he is brought into court according to law.  10 Ency. Pl. & Pr. 671.  Section 5565, Comp. Laws 1909 (section 4688, Rev. Laws 1910), reads as follows:  'The defense of an infant must be made by a guardian for the suit, who may be appointed by the court in which the action is prosecuted, or by a judge thereof, or by a probate (county) judge.  The appointment cannot be made until after the service of the summons in the action as directed in this Code.'  It thus appears that a guardian *ad litem* can be appointed only after a service of summons in the action as required by the provisions of statute."

In the first paragraph of the syllabus in this case we find a most wholesome and beneficent rule, which would be well for the courts, and all other persons having business with minors, or their property interests, to keep well in mind:

"It is the duty of courts to guard with jealous care the rights of minors in actions brought against them.  No presumption against an infant can be permitted, but, on the contrary, every presumption is indulged in his favor, and a guardian *ad litem* must see to it that every question available in the defense of his ward is urged and acted upon by the court; and in case of the failure of the guardian *ad litem* to properly discharge his duty in that or any other respect it becomes the imperative duty of the court to protect the infant's rights."

From the foregoing it is apparent that the decrees were absolutely void, for want of jurisdiction of the person of the minor.  In an early opinion of the territorial Supreme Court, upon a like question, in *Hockaday v. Jones*, 8 Okla. 159, 56 Pac. 1055, Mr. Justice Tarsney, speaking for the court, says:

"The trial court having found that no personal service had been had upon Jones, and that, at the time constructive service by publication was sought to be obtained, he was not a nonresident of the territory, but was a resident therein, and by due diligence personal service could have been had upon him, do such findings support the conclusion that the court rendering judgment upon such attempted constructive service was without jurisdiction, and the proceedings and judgment absolutely void? This must be answered in the affirmative. Jurisdiction in quasi proceeding *in rem* implies jurisdiction of the person, as well as of the subject-matter. Jurisdiction of the person is acquired by appearance or service. There is no appearance. Service is obtained by summons upon a resident, by publication upon a nonresident, or one concealed and beyond the reach of summons. Service in this case was by publication, but the defendant was a resident, and not concealed. Therefore the publication was inoperative to bring the defendant into court, and the judgment void for want of jurisdiction of the person. *Bixby v. Bailey,* 11 Kan. 349; *Insurance Co. v. Robbins* [53 Neb. 44] 73 N. W. 269; *Stamps v. Bridwell,* 57 Mo. 22; *Brown v. Woody,* 64 Mo. 547; Freem. Judgm. (4th Ed.) sec. 117; 1 Black, Judgm. sec. 218; 12 Enc. Pl. & Pr. p. 179, and cases cited. Mr. Black, in the section of his work above cited, says: 'It is a familiar and universal rule that a judgment rendered by a court having no jurisdiction of either the parties or the subject-matter is void and a mere nullity, and will be so held and treated whenever and wherever, and for whatever purpose, it is sought to be used or relied on as a valid judgment."

Judge Black, in his excellent work on Judgments, further says:

"The first and fundamental requisite to the validity of a judgment is that it should have been rendered by a court having jurisdiction. Without jurisdiction the courts can do nothing, and a judgment given forth without jurisdiction is a mere nullity. The jurisdiction required is of

three sorts: (1) Jurisdiction of the parties; (2) jurisdiction of the general subject-matter; (3) jurisdiction of the particular matter which the judgment professes to decide."

The same author, in speaking of the validity, effect, and weight of a void judgment, says:

"Now a 'void' judgment is in reality no judgment at all. It is a mere nullity. It is attended by none of the consequences of a valid adjudication, nor is it entitled to the respect accorded to one. It can neither affect, impair, nor create rights. As to the person against whom it professes to be rendered, it binds him in no degree whatever, it has no effect as a lien upon his property, it does not raise an estoppel against him. As to the person in whose favor it professes to be, it places him in no better position than he occupied before; it gives him no new right, but an attempt to enforce it will place him in peril. As to third persons, it can neither be a source of title nor an impediment in the way of enforcing their claims. It is not necessary to take any steps to have it reversed, vacated, or set aside. But whenever it is brought up against the party, he may assail its pretensions and show its worthlessness. It is supported by no presumptions, and may be impeached in any action direct or collateral."

In *Larimer v. Knoyle,* 43 Kan. 344, 23 Pac. 489, that court says:

"It is well settled in this state that a judgment rendered without jurisdiction is void, absolutely and entirely, and may be shown to be void in a collateral as well as in a direct proceeding, and by extrinsic evidence as well as by the record itself."

It follows—it must follow—from the foregoing authorities, which are approved and adopted by a long list of decisions of the various courts of the states, that the decrees, Nos. 2024 and 2025, viewed in the light of the

evidence admitted by the demurrer, are absolutely void as to all parties, for the good reason that the court had no jurisdiction of the person of the minor, Albert Harrison.

It would seem that the third inquiry, viz.: "Could the validity of the decrees [2024 and 2025] be attacked in this proceeding?" is fully answered by the foregoing authorities. In the first place, we are of the opinion that this action is not a collateral, but a direct, attack on those decrees. The petition alleges that:

"On the 21st day of October, 1907, defendants Gallagher and Erwin, joined by their wives, executed to defendant Hill a warranty deed for said lands; that on the 14th day of May, 1909, in two certain causes then pending in the district court of Grady county, Okla., numbered, respectively, 2024 and 2025, in which causes J. T. Erwin and J. H. Gallagher were, respectively, plaintiffs and Albert Harrison was defendant, judgments were rendered in favor of said plaintiffs and against Albert Harrison, quieting the title to said lands in the said plaintiffs in said causes, which judgments were procured by fraud on the part of the successful plaintiffs, in that the said Albert Harrison was then a minor, under the age of 18 years, and then had a duly appointed, qualified, and acting guardian; that no service was had on said Albert Harrison or his said guardian, but an attempted acceptance of service by Albert Harrison was filed, in which the facts set forth in the petitions of plaintiffs were alleged to be true, but which judgments were erroneous. irregular, obtained by fraud, and should be vacated and set aside."

The language of the petition is a direct attack upon the judgments, and charges that they were obtained by fraud, and that the court had no jurisdiction of the defendant, which is shown by the records, and pleadings, and evidence in the case. This action was brought under

section 6101, and subdivisions 4, 5 and 7, of section 6094, Comp. Laws 1909, which are section 5274, and subdivisions 4, 5 and 7 of section 5267, Rev. Laws 1910, and are as follows:

Section 5274. "Proceedings to vacate or modify a judgment or order, for the causes mentioned in subdivisions four, five and seven, of section 5267, must be commenced within two years after the judgment was rendered or order made, unless the party entitled thereto be an infant, or a person of unsound mind, and then within two years after removal of such disability. Proceedings for the causes mentioned in subdivisions three and six of the same section, shall be within three years, and in subdivision nine, within one year after the defendant has notice of the judgment. A void judgment may be vacated at any time, on motion of a party, or any person affected thereby."

Section 5267. "The district court shall have power to vacate or modify its own judgments or orders, at or after the term at which such judgment or order was made."

Fourth. "For fraud, practiced by the successful party, in obtaining the judgment or order."

Fifth. "For erroneous proceedings against an infant, or a person of unsound mind, where the condition of such defendant does not appear in the record, nor the error in the proceedings."

Seventh. "For unavoidable casualty or misfortune, preventing the party from prosecuting or defending."

And also under subdivision 8 of said section 5274, and section 5142 of same statutes, which are as follows:

Eight. "For errors in a judgment, shown by an infant in twelve months after arriving at full age, as prescribed in section 5142."

Section 5142. "It shall not be necessary to reserve, in a judgment or order, the right of an infant to show cause against it after his attaining full age; but in any case in which but for this section, such reservation would have been proper, the infant, within one year after arriving at the age of twenty-one years, may show cause against such order or judgment."

Again, we can see no reason why th¹s case could not have been brought, and in fact it may have been brought, under subdivision 3 of section 5267, which is as follows:

"For mistake, neglect, or omission of the clerk, or irregularity in obtaining a judgment or order."

In the case of *Hockaday v. Jones, supra,* the third paragraph of the syllabus is as follows:

"Where a judgment has been rendered against a party without service, actual or constructive, he has a complete adequate remedy at law against the same, under subdivision 3 of section 586 of the Code of Civil Procedure, which provides that the district court shall have power to vacate or modify its own judgment or order at or after the term at which such judgment or order was made, for irregularity in obtaining such judgment or order; a judgment without service being irregularly obtained."

In the body of the opinion at page 167 of 8 Okla., at page 1057 of 56 Pac., the court says:

"The language of that subdivision is general, and applies to all judgments irregularly obtained; and a judgment obtained without service upon the defendant, either by personal service or publication, is irregularly obtained. Irregularity may consist in an omission or departure form the principles of 'due process of law,' as well as in an omission or departure from mere rules of procedure."

We see no reason why this rule should not apply in this case.

From the foregoing it must be apparent to all that this action is a direct attack upon the decrees mentioned in the petition. In *Matin v. Gray*, 19 Kan. 461, 27 Am. Rep. 149, Mr. Justice Valentine, speaking for the court, says:

"A judgment rendered without jurisdiction is void, * * * and a personal judgment, rendered without notice to the defendant, is rendered without jurisdiction, and is consequently void. * * * A judgment void for want of notice may be set aside at any time, even after the lapse of more than three years, on a motion made therefor by the defendant. * * * And this may be done in some cases even where it requires extrinsic evidence to show that the judgment was rendered without notice and without jurisdiction. * * * A judgment rendered with jurisdiction can never be impeached in a collateral proceeding; but a judgment rendered without jurisdiction may. In fact a judgment rendered without jurisdiction is no judgment at all. A judgment cannot be rendered against any person until he has had his day in court, and until he has had an opportunity to be heard."

It is admitted that Albert Harrison was a minor, and died at the age of 18 years. It is admitted, and the record shows, that the petitions of plaintiffs and answers of defendant were filed the same day, which is conclusive proof that there was no service of summons. The census card and enrollment records show Albert Harrison to have been 11 years of age on the 25th day of September, 1902. Act. Cong. May 27, 1908, c. 199, 35 Stat. 313, sec. 3, provides that these rolls shall be conclusive evidence of quantum of blood and age of the citizen or freedman of the Five Civilized Tribes. This act was passed after the attempted transfer of the land, and is therefore not controlling in cases involving such transactions, even though the action may not have been commenced until after the act

took effect. Such was, in substance, the holding in *Phillips v. Byrd,* 43 Okla. 556, 143 Pac. 684; *Grayson v. Durant,* 43 Okla. 799, 144 Pac. 592; *Scott v. Brakel,* 43 Okla. 655, 143 Pac. 510.

Upon a full consideration of the case, we are of opinion: (a) That the deeds from the minor, Albert Harrison, to J. H. Gallagher and J. T. Erwin were void; (b) that the decrees Nos. 2024 and 2025, referred to in the petition, were void for want of service of summons or other notice upon the minor; (c) that this action is not a collateral, but on the contrary a direct, attack upon said decrees; and, for these reasons, the trial court erred in sustaining the demurrers to the evidence, and the case should be reversed and remanded.

By the Court: It is so ordered.