**CONDIT et al. v. CONDIT et al.**

No. 7806—Opinion Filed Oct. 24, 1916.

Rehearing Denied Nov. 6, 1917.

(168 Pac. 456.)

1. **Infants—Process—Statute—Waiver.**

Service of process, as required by statute, upon an infant defendant cannot be waived. No one is authorized to appear for him in an action prior to such service. His defense must be made by a guardian for the suit whose appointment cannot be made, until after service of summons in the action.

2. **Judgment—Jurisdiction of Person — Invalidity—Impeachment—Direct and Collateral Attack—"Void Judgment."**

A judgment rendered without jurisdiction of the person is no judgment at all; it is a mere nullity. It is attended by none of the consequences of a valid adjudication, nor is it entitled to the respect accorded to one. It can neither affect, impair, nor create rights. As to the person against whom it professes to be rendered, it binds him in no degree whatever. As to the person in whose favor it professes to be, it places him in no better position than he occupied before, and gives him no new right. As to third persons, it can neither be a source of title, nor an impediment in the way of enforcing claims. It is not necessary to take any steps to have it reversed, vacated, or set aside, and whenever it is brought up against the party he may assail its pretensions and show its worthlessness. It is supported by no presumptions, and may be impeached in any action, direct or collateral. It is a judgment which is entirely void, and may be shown to be void in a collateral as well as a direct proceeding, by extrinsic evidence as well as by the record itself.

3. **Estoppel—Operation—Injury.**

An estoppel operates only between parties and privies, and the party who asserts an estoppel must be one who has, in good faith, been misled to his injury.

(Syllabus by Bleakmore, C.)

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Action by Stephen D. Condit and Melissa O. Condit against Ralph F. Condit, Beatrice May Condit, and others. Judgment for plaintiffs, and the named defendants bring error. Reversed.

T. L. Blakemore, for plaintiffs in error.

John G. Ellinghausen and Burdick & Wilcox, for defendants in error.

Opinion by BLEAKMORE, C. On February 21, 1915, Stephen D. Condit and Melissa O. Condit as plaintiffs commenced action against Julia F. Steele, Ralph F. Condit, Beatrice May Condit, a minor, Julia F. Steele, as guardian, and M. L. Moore, defendants, seeking a decree quieting the title to certain lands. There was judgment for plaintiffs, from which Ralph F. and Beatrice May Condit have appealed.

In the petition it is alleged that by virtue of certain conveyances the title to the lands involved vested in one Edward B. Condit, who thereafter died intestate, leaving surviving him the defendants, Julia F. Steele, then Julia F. Condit, Ralph F. Condit, and Beatrice May Condit, his widow and only children, who upon his death succeeded each to an undivided one-third interest in said land; that upon proceedings in partition commenced in the district court of Creek county by Julia F. Condit against Ralph F. and Beatrice May Condit, said land was partitioned and sold and title thereto conveyed by sheriff's deed to Julia F. Condit, who on September 5, 1911, conveyed the same to the plaintiffs. The allegations as to the defendant Moore are immaterial upon this proceeding. Julia F. Steele disclaimed any interest in the property. Ralph F. Condit and Beatrice May Condit also answered, each denying the title of the plaintiff to the lands involved, and alleging that they were minors at the time the proceedings in partition were commenced and the judgment therein rendered as set forth in the petition: that the district court of Creek county was without jurisdiction to render the judgment therein, and the same was void for the reason that they were not served with process, and by way of cross-petition allege that the plaintiffs have wrongfully withheld from them the possession of said land and pray for damages, etc. To the answer of Beatrice M. Condit plaintiffs reply alleging that at the time of the suit in partition Julia F. Condit, her mother, was her legal guardian and as such consented to the action of the court therein and that she was also represented by guardian ad litem; that Julia F. Condit as such guardian received a share of the purchase price of said land to which defendant Beatrice May Condit, her ward, was entitled, and reported the sale to the county court of Creek county, in the guardianship proceedings, wherein her action was approved, etc.

At the time of the proceedings in the partition suit in the spring of 1911, Ralph F. and Beatrice May Condit were infants of 17 and 14 years, respectively; the latter being the child and ward of Julia F. Condit, who instituted that action. Beatrice May Condit lived with her mother on the premises, and Ralph, who was married, resided elsewhere.

The return of summons in said action is as follows:

"Received this writ 30th day of Sept., 1910, at 10 O'clock A. M., and served the same upon the following persons, defendants, within named, at the times following, to wit:

"Ralph F. Condit by levying copy with his wife Oct. 6, 1910, at 11:30 A. M·

"Beatrice May Condit by Reding copy to Her mother and Gardine on Oct. the 6th at 11:30 A. M., 1910.

```
------------------------------ 191____
------------------------------ 191____
```

by delivering to each of said defendants, personally, in said county, a true and certified copy of the within summons, with all the indorsements thereon. And upon

```
------------------------------ 191____
------------------------------ 191____
------------------------------ 191____
```

by leaving for each of said defendants at usual place of residence of each in said county, a true and certified copy of the within summons, with all the indorsements thereon.

"The following persons, defendants, within named not found in said County.

"Sheriff's Fees.

"Service and return, first person_____ .50
"Serving 1 additional persons_____ .25
"_____ 2 copys summons_____ .50
"Mileage 105 Miles_____110.50
"Extra expense for Board_____ 2.25

"Total _____-14.00

"Individual expense paid out by N. A. C. for Board $2.25 is totalled to the right.

"H. G. Steine, Sheriff,
"By_____
"By W· A. Gauthron, Deputy."

Subsequent to such return guardian ad litem was appointed and answered for said infants. The commissioners were named and the land appraised. Julia F. Condit elected to take the same at the appraisement, paid the amount thereof into the registry of the court, and a sheriff's deed was made to her. In January, 1912, rights of majority were conferred upon Ralph F. Condit by judgment of the district court of Creek county, whereupon he received one-third of the appraised value of the premises which had been paid into court by Julia F. Condit. This sum, however, he offered to return and made tender thereof upon the trial of the instant case.

The principal question for determination here is whether the district court of Creek county in the partition action acquired jurisdiction of Ralph F. and Beatrice May Condit as parties therein. It seems to be conceded, and we assume there is no doubt, that jurisdiction of other than the moving parties in suit seeking the partition of real property must be acquired as in other civil actions. 30 Cyc· 221. Relative to the return of the summons, supra, in the partition action the court below upon the trial of this cause made findings, which are incorporated in the case-made, as follows:

"The court is of the opinion that Ralph had due notice of the partition suit, and that he has become of age, reached his majority, more than one year next after the rendition of the judgment; that the testimony here in this case shows that he ought not to recover and judgment should be rendered on the whole testimony in favor of the plaintiff so far as Ralph Condit is concerned. So far as Beatrice May Condit is concerned, it appears that from a return of the sheriff on a summons introduced in evidence in this case that the sheriff returned that he had served the summons by reading the summons to the mother and guardian of Beatrice May Condit. It appears from the records and the exhibits introduced in this case that she was about four years old at the time. The record is silent as to whether there was any service ever made upon Julia F. Condit, but the record does show that after the suit in partition was begun, by order of this court a guardian ad litem was appointed to represent this minor, and that he filed his answer in that cause on the 20th day of October, 1910. It appears to the court that she was duly represented in that proceeding, and the court cannot decide that she was not properly brought into court. It seems to me from all the testimony in the whole case that judgment should be rendered in favor of the plaintiff and against her. It appears that all proceedings were taken and had and her rights were defended in exactly the same manner they would have been had the summons been delivered to her in person."

Thus it will be seen that the trial court considered that service of process was not had upon the infant parties in the partition action by delivering to them personally a copy of the summons. Inasmuch as the return was made upon a printed blank, the only written portion thereof following the words "to wit" being: "Ralph F. Condit by leving copy with his wife Oct· 6, 1910, at 11:30 A. M. Beatrice May Condit by Reding Copy to Her mother and Gardine on Oct. the 6th at 11:30 A. M., 1910"—we are of opinion that the same was properly susceptible of such construction. Our statute (R. L. 1910, § 4688) provides:

"The defense of an infant must be by a guardian for the suit, who may be appointed by the court in which the action is prosecuted, or by a judge thereof, or by a county judge. The appointment cannot be made

until after the service of the summons in the action, as directed in this Code."

By section 4721 it is provided:

"When the defendant is a minor, under the age of fourteen years, the service must be upon him and upon his guardian or father, or if neither of those can be found, then upon his mother, or the person having the care and control of the infant, or with whom he lives. If neither of these can be found, or if the minor be more than fourteen years of age, service on him alone will be sufficient. The manner of service may be the same as in the case of adults."

Ralph F. Condit was an orphan more than 14 years of age, without guardian. On him service of summons might have been obtained as provided in section 4711 of Rev Laws 1910, viz.:

"By delivering a copy of the summons to the defendant personally or by leaving one at his usual place of residence with some member of his family over fifteen years of age, at any time before the return day."

But, as shown by the return, this manner of service was not observed. It merely appears that a copy of the summons was left with his wife. It is not shown that this was at his usual place of residence, or that she was over the age of 15 years. The service on Beatrice May Condit was by reading a copy of the summons to her mother and guardian, the petitioning party in the action, and not by delivering a copy thereof to her. It is true that a guardian ad litem was appointed for these infants by whom they appeared and answered in such action; but by virtue of the statute, supra, the court was without authority to make such appointment until after they had been served with process as required thereby, and such appearance could not constitute a waiver of jurisdiction of their person. In Bolling et al. v. Campbell, 36 Okla. 671, 128 Pac. 1091, wherein the following return of summons was considered:

"I received the attached summons on the 5th day of February 1909, and executed the same in my county by leaving a true and certified copy of the attached summons at the usual place of residence of the within named Theodore Bolling and Octavia Bolling, for each of them, by leaving said copies in the hand of Clermont Dixon in the presence of the said Theodore Bolling, and the said Clermont Dixon being their aunt, and a person over the age of fifteen years, and a member of their family: whereupon the said Clermont Dixon delivered to Theodore Bolling, in my presence, one of such copies, so certified"

—it is said:

"An examination of the return of the summons as hereinabove set out will disclose that no age of the minors is given whatever, and we connot determine whether they were above or over the age of fourteen years or not; further, the return fails to show any service whatever upon the minors, or upon their guardian or father, etc., as is required by law. The return in this particular is fatally defective, and, conceding that the service in Pittsburg county was sufficient to confer jurisdiction upon the district court of Jefferson county, yet the manner of service, as disclosed by the return of the sheriff, shows that it was not in conformity with the provisions of the statute, and the motion to quash should have been sustained by the court. Section 5598, Comp. Laws 1909, reads: 'The service should be made by delivering a copy of the summons to the defendant personally, or by leaving one at his usual place of residence with some member of his family over fifteen years of age at any time before the return day.' This section means that the service must first be made upon the minor defendant personally, and if said defendant cannot be found, then the service may be made by leaving a copy at his usual place of residence with a member of his family. The return in this case shows an utter failure to comply with this requirement of the statute. It must also be remembered in this case that, according to the provisions of our statute, two persons must be served when the infant is under fourteen years of age—that is to say, the infant and the guardian or father—and if the guardian or father be not found, then the service must be upon the person having such infant in charge. In the case at bar the officer's return shows that the summons was left at the usual place of abode of said infants, by leaving copies in the hand of Clermont Dixon, who was a member of their family. If the minors were over the age of fourteen years, the service was clearly insufficient, and shows that the copy delivered to Clermont Dixon was given by the latter to Theodore Bolling, one of the minors, and this is not the method required to be followed by the statute. The officer must serve the process. He cannot delegate this authority to some other person. From a consideration of the foregoing, it is apparent that no proper or legal service of summons was had upon the minors in this case, and it goes without saying that an infant cannot waive issuance and service of summons; nor can any person, not even his guardian, do so for him. An adult can waive jurisdiction of his person, and will do so if he appears in court and pleads to the merits; but with an infant it is different, and in a case where personal service upon an infant is required, such as the one at bar, he cannot waive such service; nor can his guardian or guardian ad litem, or his attorney, waive it

for him. 10 Ency. Pl. & Pr. 612; 22 Cyc. 681. Nor can any person appear for an infant until he is brought into court according to law. 10 Ency. Pl. & Pr. 671. Section 5565, Comp. Laws 1909, reads as follows: 'The defense of an infant must be made by a guardian for the suit, who may be appointed by the court in which the action is prosecuted, or by a judge therof, or by a probate (county) judge; the appointment cannot be made until after the service of the summons in the action as directed in this Code.' It thus appears that a guardian ad litem can be appointed only after a service of summons in the action as required by the provisions of statute."

See, also, Scott v. Brown, 40 Okla. 184, 137 Pac. 113; Bruner v. Nordmier, 48 Okla. 415, 150 Pac. 159; Jefferson v. Gallagher, 56 Okla. 405, 150 Pac. 1071.

Upon the foregoing authority it must be held that the district court of Creek county in the partition action acquired no jurisdiction of the person of either Ralph F. or Beatrice May Condit, and therefore the judgment therein rendered was a mere nullity. In Black on Judgments, it is said:

"Sec. 218. It is a familiar and universal rule that a judgment rendered by a court having no jurisdiction, of either the parties or the subject-matter, is void and a mere nullity, and will be so held and treated whenever and wherever and for whatever purpose it is sought to be used or relied on as a valid judgment. The effect of a want of jurisdiction is clearly stated in an early decision of the United States Supreme Court in the following language: 'Where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable but simply void, and form no bar to a recovery sought, even prior to a reversal, in opposition to them. They constitute no jurisdiction; and all persons concerned in executing such judgments or sentences are considered in law as trespassers.' Hence, for example, if a judgment is merely erroneous, the title acquired by a sale under it is valid and cannot be impeached collaterally, but if it is void for want of jurisdiction, the vendee takes no title whatever, and the sheriff's deed does not even create a cloud on the title which a court of equity can remove."

"Sec. 170. * * * Now a void judgment is in reality no judgment at all. It is a mere nullity. It is attended by none of the consequences of a valid adjudication nor is it entitled to the respect accorded to one. It can neither affect, impair, nor create rights. As to the person against whom it professes to be rendered, it binds him in no degree whatever; it has no effect as a lien upon his property; it does not raise an estoppel against him. As to the person in whose favor it professes to be, it places him in no better position than he occupied before; it gives him no new right, but an attempt to enforce it will place him in peril. As to third persons, it can neither be a source of title nor an impediment in the way of enforcing their claims. It is not necessary to take any steps to have it reversed, vacated, or set aside. But whenever it is brought up against the party, he may assail its pretensions and show its worthlessness. It is supported by no presumptions, and may be impeached in any action, direct or collateral."

In Jefferson v. Gallagher, supra, it is held:

"An infant cannot waive issuance and service of summons, nor can any person, not even his guardian, do so for him. In all cases where personal service upon an infant is required, he cannot waive such service, nor can his guardian or guardian ad litem, or his attorney, waive it for him, nor can any person appeal for an infant until he is brought into court according to law. Under section 5565, Comp. L. 1909 (section 4688, R. L. 1910), the defense of an infant must be made by a guardian for the pending suit, who may be appointed by the court in which the action is prosecuted, or by the judge thereof, or by a county judge; but the appointment cannot be made until after the service of the summons in the action has been made upon such minor, as provided by law. The first fundamental requisite to the validity of a judgment is that it should have been rendered by a court having jurisdiction, for without jurisdiction the courts can do nothing, and a judgment rendered without jurisdiction is a mere nullity. The jurisdiction required is of three sorts: (1) Jurisdiction of the parties; (2) jurisdiction of the general subject-matter; (3) jurisdiction of the particular matter which the judgment professes to decide. A judgment rendered without jurisdiction of the person is no judgment at all; it is a mere nullity. It is attended by none of the consequences of a valid adjudication, nor is it entitled to the respect accorded to one. It can neither affect, impair nor create rights. As to the person against whom it professes to be rendered, it binds him in no degree whatever. As to the person in whose favor it professes to be, it places him in no better position than he occupied before, and gives him no new right. As to third persons, it can neither be a source of title, nor an impediment in the way of enforcing claims. It is not necessary to take any steps to have it reversed, vacated, or set aside, and whenever it is brought up against the party, he may assail its pretensions and show its worthlessness.

It is supported by no presumptions, and may be impeached in any action, direct or- collateral. It is a judgment which is entirely void and may be shown to be void in a collateral as well as a direct proceeding, by extrinsic evidence as well as by the record itself."

. It is contended that Ralph F. Condit is estopped to assert the invalidity of the judgment in the partition action, for the reason that after rights of majority had been conferred upon him he accepted his proportionate share of the appraised value of the land involved. It will be noted that the deed from Julia F. Condit to the plaintiff was executed on September 5, 1911, months before the receipt of such money by Ralph F. Condit. It will thus be seen that the plaintiffs in accepting and relying upon the deed executed to them by Julia F. Condit could not have been influenced by the subsequent conduct of Ralph F. Condit. "Estoppels operate only between parties and privies, and the party who pleads an estoppel must be one who has, in good faith, been misled to his injury." Williams v. Purcell, 45 Okla. 489, 145 Pac. 1151; 16 Cyc. 777; Bigelow on Estoppel (6th Ed.) 617. The acts of Ralph F. Condit subsequent to the deed to plaintiffs by virtue of which they assert title to the land in controversy could not operate to estop him from the assertion of his rights herein.

It follows that the judgment of the trial court should be reversed.

By the Court: It is so ordered.