## CONDREN et al. v. MARLIN.

No. 13740—Opinion Filed May 12, 1925.

Rehearing Denied Dec. 1, 1925.

(Syllabus.)

### Indians — Curtesy — Rights of Surviving White Husband in Creek Wife's Allotment.

Act of Congress May 2, 1890, put in force in the Indian Territory the common law of England as adopted by the state of Arkansas, except as to Indians and their estates. Act of Congress June 7, 1897, extended the law to all persons in the Indian Territory, irrespective of race, and title by curtesy consummate as it existed in the state of Arkansas attaches in favor of the husband to the lands of which his wife died seised; and that part of section 6 of the Act of Congress of June 30, 1902 (32 Stat. at L. 500), reading: "Provided that only citizens of the Creek Nation, male and female, and their Creek descendants, shall inherit lands of the Creek Nation," does not prohibit a white man, who is a noncitizen of the Creek Nation, from asserting his curtesy right to the lands of his deceased wife, who was a Creek citizen, where they lived upon the land, had children born alive to them and the wife died seised during coverture.

Error from District Court, McIntosh County; Harve L. Melton, Judge.

Action by B. A. Marlin against Lucy Condren, nee Lewallen, and John Lewallen, for possession of land, partition, and damages. Judgment for plaintiff, and defendants appeal. Reversed.

Turner, Turner, Harley & Parris, for plaintiffs in error.

Claude A. Niles, for defendant in error.

PHELPS, J. Louisa Lewallen was a citizen of the Creek Tribe of Indians of the one-fourth blood. On August 21, 1900, she and John Lewallen were duly married. John Lewallen was a white man, a noncitizen of the Creek Nation not of Indian blood or descent. After the marriage of Louisa Lewallen and John Lewallen, the land which is the subject-matter of this action was duly selected by and allotted to said Louisa Lewallen and allotment patents or deeds were issued, approved, and delivered, after which said Louisa Lewallen and John Lewallen, while living together as husband and wife, moved upon said land and occupied it as their home until the death of said Louisa Lewallen on November 29, 1904, and the same has been continuously occupied by John Lewallen as his home since the death of his said wife.

At the death of said Louisa Lewallen she left surviving, her husband, John Lewallen, and three minor children, Lucy, Lillie, and Charlie Lewallen, all the lawful issue of the marriage between Louisa Lewallen and John Lewallen, and also Nora Deer, who is now Nora Marlin, a child by a former husband. On the 26th day of December, 1904, after the death of Louisa Lewallen, her son, Charlie Lewallen, then a small boy, also died. Lucy and Lillie grew to womanhood and married, and are referred to in the record herein as Lucy Condren and Lillie Nelson. Nora Marlin and Lillie Nelson, daughters of decedent, sold and conveyed their interest in the lands in question — the allotment of Louisa Lewallen, deceased—to B. A. Marlin, and on September 26, 1921, said B. A. Marlin filed his action in the district court of McIntosh county, Okla., against Lucy Condren and John Lewallen, alleging that he was the owner in fee of an undivided two-thirds interest in the lands in question, and that Lucy Condren was the owner of the other undivided one-third interest therein; that John Lewallen had no interest in the land, but had occupied it for a number of years, and prayed judgment for possession of the premises, for damages, rents, and profits, and also for partition of the real estate. Defendants filed their answer pleading the facts relative to the allotment, marriage, birth of the children, occupancy of the premises as a homestead, etc., and that upon the death of said Louisa Lewallen the defendant John Lewallen immediately entered into possession in his own right as tenant by the curtesy consummate, and has been in actual physical possession of said land as such tenant taking the rents and profits thereof ever since said date, and further alleging that upon the birth of issue to said Louisa Lewallen during the subsistence of the marriage relation with said John Lewallen, pursuant to the laws of the state of Arkansas, which were in full force until November 16, 1907, he became a tenant by the curtesy initiate, and upon the death of his wife he became seised of a vested life estate in all of said land as tenant by the curtesy consummate, and entitled to the possession of said land during the remainder of his natural life, with the right to the rents and profits thereof.

The case was tried upon an agreed statement without a single disputed question of fact, and on the 12th day of April, 1922, the district court of McIntosh county rendered judgment finding plaintiff entitled to the immediate possession of said premises as a tenant in common with defendant Lucy Condren, and further finding that plaintiff, B. A.

Marlin, was the owner of an undivided two-thirds interest and Lucy Condren was the owner of an undivided one-third interest in the land, and that John Lewallen had no interest therein and had unlawfully detained possession of the premises, and rendered judgment against him for the sum of $1,150 as rents and profits received and collected by him, and also rendered judgment in partition, from which judgment and the court's order overruling their motion for a new trial defendants prosecute this appeal.

There are two questions presented for our determination by the record in this case, the first of which is: Under the law in force on November 29, 1904, the date of the death of Louisa Lewallen, was there any provision for an estate by the curtesy in the Creek Nation? This must be answered in the affirmative. In Kenoly et al. v. Hawley, 84 Okla. 120, 202 Pac. 494, this court had under consideration a cause the facts out of which the same grew being that on the 3rd day of July, 1902, Mary Adams, a Creek freedman citizen of the Creek Nation, died intestate, and left surviving her as her sole heirs her husband, Ben Adams, and her three minor children, all of tender years: Upon the death of Mary Adams the title to the property in controversy descended to her three children under and by virtue of chapter 49 of Mansfield's Digest of the Laws of Arkansas, which had been put into effect in the Indian Territory by an Act of Congress of June 30. 1902, c. 1323, 32 Stat. 501. Ben Adams, the husband of deceased and father of her minor children, claimed an estate by curtesy in his deceased wife's estate by virtue of chapter 20 of Mansfield's Digest of the Laws of Arkansas, put in force in the Indian Territory by Act of Congress of May 2, 1890. c. 182, 26 Stat. 94, and this court, commenting on his claim in the body of the opinion, made use of the following language:

"The final question to be considered is the the question of curtesy of Ben Adams in the estate of his deceased wife, Mary Adams. The wife died seised and with issue born alive, and if the right of curtesy existed under the law in force her estate was subject thereto. In the case of Johnson et al. v. Simpson, 40 Okla. 413, 139 Pac. 129, Mr. Justice Kane, speaking for the court, said: 'Upon the passage and approval of Act May 2, 1890, c. 182, 26 St. at L. 94, which extended over and put in force in the Indian Territory the common law of England as adopted by the state of Arkansas, with the proviso excepting Indians and their estates, and Act June 7, 1897, c. 3, 30 St. at L. 83, which provided that such laws should apply to all persons of Indian Territory, irrespective of race, and the Curtis Act of June 28, 1898, c. 517, 30 St. at L. 495, which provided that the laws of Indian Tribes should no longer be enforced, title by curtesy consummate, as it existed in the state of Arkansas, attached in favor of the husband to all lands of which the wife became seised during coverture.'

"This case has been followed, and the doctrine announced therein reaffirmed, in the cases of Pierce et al. v. Ellis et al., 51 Okla. 710, 152 Pac. 340; Morris v. Sweeney, 53 Okla. 163, 155 Pac. 537; Bridges v. Wright, 56 Okla. 10, 155 Pac. 883; Miles v. Miles, 73 Okla. 198, 175 Pac. 222. It follows that the right of curtesy of the husband, Ben Adams, under the Arkansas statute then in force, must be sustained."

And the eighth paragraph of the syllabus is as follows:

"Act Cong. May 2, 1890, put in force in the Indian Territory the common law of England as adopted by the state of Arkansas, except as to Indians and their estates. Act Cong. June 7, 1897, extended the law to all persons in the Indian Territory, irrespective of race, and title by curtesy consummate, as it existed in the state of Arkansas, attaches in favor of the husband to all lands of which his wife died seised."

Therefore it appears to be well settled that at the time of the death of decedent the laws in force recognized an estate by the curtesy in the Creek Nation, and the other and remaining question for us to determine is: Is such an estate one that is embraced within the terms of the first proviso to section 6 of the Supplemental Creek Agreement, which provides:

"That only citizens of the Creek Nation, male and female, and their Creek descendants, shall inherit lands of the Creek Nation."

Hopkins on Real Property, page 73, sec. 43, says:

"By common law a husband is entitled to curtesy, which is an estate for the life of the husband in all the wife's realty, provided the following conditions concur: (a) Valid marriage; (b) issue born alive and capable of inheriting; (c) seisin in deed of the wife during coverture; (d) death of wife before husband."

From the facts as disclosed by the record in this case there is no question but that John Lewallen was entitled to an estate by the curtesy consummate, unless because of his being a noncitizen of the Creek Nation and not of Indian blood or descent he was deprived thereof by the proviso to section 6 of the Act of Congress of June 30, 1902 (32 Stat. at L. 500), which seems to have

been the basis of the opinion of the trial court.

That part of section 6 applicable reads as follows:

"* * * The provisions of the Act of Congress approved March 1, 1901 (31 Stat. at L. 861), in so far as they provide for descent and distribution according to the laws of the Creek Nation, are hereby repealed and the descent and distribution of land and moneys provided for by said act shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas now in force in Indian Territory; **Provided, that only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation.** * * *"

In ascertaining whether the term "inherit," as used above, is broad enough to include the common-law right of curtesy, it is interesting and possibly illuminating to consider the meaning of the word "inherit." It is defined in Black's Law Dictionary as meaning "to take by inheritance; to take as heir on the death of the ancestor." By Webster as meaning "to take by descent from an ancestor; to take or receive, as a right or title, by law from an ancestor at his decease." And in Re Byford's Will, 65 Okla. 159, 165 Pac. 194, in the fifth paragraph of the syllabus, this court said:

"* * * The word 'inherited' is synonymous with the word 'descend' as used in the original agreement with the Creek Nation approved by the Act of Congress March 1, 1901. * * *"

Therefore, the real question in this case is: Does the estate by the curtesy vest in the husband by descent, or is it an estate acquired by virtue of the marriage relation?

Tiffany, Real Property (2nd Ed.) sec. 237, states the rule as follows:

"The common-law estate by the curtesy, commencing as it did before the death of the wife, can evidently not be regarded as having vested in the husband by **descent** from her, although he acquired it by operation of law and not by assignment. The modern curtesy, as it exists since the abolition of curtesy initiate, with merely a possibility of an estate in the husband until the wife's death, when an estate becomes vested in the husband, although it does so by operation of law, has been regarded as not vesting in him by descent or succession for the purpose of the inheritance tax. Such a view accords with the analogy presented by the case of dower, and with the common-law view of the right of curtesy, which, as above indicated, could not be regarded as taking effect by way of descent."

Thompson on Real Property, page 884, sec. 780, says:

"By vesting during the lifetime of the wife an estate by the curtesy is not one acquired by descent. The husband's right of curtesy is not acquired by him by reason of intestate laws, but is a common-law right which during the lifetime of his wife was initiate, but which after her death became consummate, and his right to the same could not be questioned from the time that his wife was seised of the property and their child or children were born alive, unless, under the married woman's acts, she disposed of the same by deed or will."

Corpus Juris, vol. 17, page 415, has this to say:

"* * * But whatever lack of judicial harmony may exist in characterizing an estate by the curtesy, it is clearly a common-law right which, although partaking somewhat of title by descent, is an estate which is cast upon the tenant by operation of law. * * *"

In Armstrong v. Wood, 195 Fed. 137, the court had under consideration, among other questions, the question of curtesy, the facts being that Annie McMinn, a full-blood citizen of the Creek Nation, was married to Allen J. Wilson, a noncitizen of the Creek Nation. They moved upon the land in question, a child was born alive to them, and the wife died before patents were issued for the land. The court upheld the husband's curtesy right, and in the third paragraph of the syllabus used the following language:

"By Act May 2, 1890, c. 182, sec. 31, 26 Stat. 94, sections 566, 567, Mansf. Dig. (sections 465q, 465r, Ind. T. Ann. St. 1899), was extended over Indian Territory with a proviso excepting Indians and their estates. By act June 7, 1897, c. 3, sec. 1, 30 Stat. 83, such laws were made to apply to all persons in the territory 'irrespective of race,' and by the Curtis Act, June 28, 1898, c. 517, sec. 26, 30 Stat. 504, it was provided that the laws of the Indian tribes should no longer be enforced. **Held,** that, by virtue of such provisions, a noncitizen husband of a Creek allottee who died after the birth of a child of the marriage was entitled by the curtesy to a life estate in her allotted lands."

Counsel for defendant in error, with some justification, criticizes this opinion and states in his brief that it has ceased to be regarded as an authority, for the reason that Judge Campbell, who wrote the opinion, based his conclusion on an entirely erroneous conception of the law when he said in the opinion:

"It is my opinion that the proviso only applies to the distribution of those several portions of the tribal lands among the heirs of each of such members of the tribe as died prior to allotment, who, had they been liv-

ing at the time of allotment, would have been entitled to the land. * * *It follows that as Annie McMinn, the original allottee involved in this case, took her allotment during her lifetime, the inhibition as to noncitizen heirs expressed in section 6 does not apply to her lands."

Counsel for defendant in error also contends that Pierce v. Ellis, 51 Okla. 710, 152 Pac. 340, should not be considered an authority in this case, for the reason that Judge Brewer (Commissioner), who wrote the opinion of this court, based the opinion upon the rule announced in Armstrong v. Wood (supra), and also for the reason that that involved a Chickasaw allotment, and the fact that in Pierce v. Ellis, a Chickasaw allotment instead of a Creek allotment was the subject-matter of the litigation, may detract somewhat from the potency of this opinion as authority in the case at bar, the law announced in the first paragraph of the syllabus, in our judgment, stated the correct theory, as follows:

"Upon the passage and approval of Act May 2, 1890, c. 182, 26 St. at L. 94, which extended over and put in force in the Indian Territory the common law of England as adopted by the state of Arkansas, with the proviso excepting Indians and their estates, and Act June 7, 1897, c. 3, sec. 1, 30 St. at L. 83, which provided that such laws should apply to all persons of the Indian Territory, irrespective of race, and Curtis Act June 28, 1898, c. 517, 30 St. at L. 495, which provided that the laws of Indian tribes should no longer be enforced, title by curtesy consummate, as it existed in the state of Arkansas, attached in favor of the husband to all lands of which the wife became seised during the coverture."

Therefore, after a careful examination of the authorities cited in the briefs, together with other available authorities, it is our conclusion that, as applied to the facts in this case, the estate by the curtesy does not vest in the husband by descent, but is an estate acquired by virtue of the marriage relation, and, therefore, the first proviso of section 6 of the Act of Cong. of June 30, 1902, and reading as follows:

"Provided, that only citizens of the Creek Nation, male and female, and their Creek descendants, shall inherit lands of the Creek Nation."

—does not abrogate or abridge the husband's right of curtesy to the lands allotted to his wife, she being a citizen of the Creek Nation and the husband being a white man and noncitizen. The judgment of the district court of McIntosh county is therefore reversed.

MASON, LESTER, HUNT, and RILEY, JJ., concur. NICHOLSON, C. J., BRANSON, V. C. J., and CLARK, J., dissent.

Note.—See under (1) 12 C. J. pp. 190, 197; 31 C. J. p. 525.