## FOWLER et al. v. HUMPHREY INV. CO. et al.

No. 19096.   Opinion Filed March 4, 1930.

Withdrawn, Modified, Refiled, and Rehearing Denied April 8, 1930.

David B. Crewson, for plaintiffs in error.

Ellis A. Robinson, Quincy J. Jones, and C. J. Sloop, for defendants in error.

TEEHEE, C. On July 13, 1926, plaintiffs in error, Margaret C. Fowler, in her own right and as the guardian of Jessie L., Edwin V., and Margaret F. Fowler, her minor children, brought suit to vacate a judgment in foreclosure of a junior or second real estate mortgage, and all proceedings had thereunder, obtained and had against them by defendant in error, Humphrey Investment Company, in the district court of Tulsa county. The case was filed as an original action in that court, that is to say, upon the filing thereof the case was docketed by a number different from that of the foreclosure action.

Under the allegations of plaintiffs' petition, the action was brought on the theory that the mortgage as to the minors was void from its inception, in that its execution was not authorized by the county court of jurisdiction, and that, as the mortgage on the property of the adult plaintiff was so joined and interwoven with the transaction and thus inseparable, the judgment in the foreclosure action and all the proceedings had thereunder were void as to both the adult plaintiff and to plaintiff minors; and, that defendant, having knowledge of the fact that the mortgage sued on was executed by the guardian without previous authority having been obtained by the county court in the manner as provided by law, by its foreclosure action in the district court, perpetrated a fraud upon the court by falsely and fraudulently alleging therein that the guardian executed and delivered the notes and mortgage sued on to the mortgagee under and by virtue of an order of the county court of Tulsa county pursuant to law, for which reason, also, the court's judgment in foreclosure and the proceedings had thereunder were void.

In the action certain damages were also sought for the wrongful detention of the property purchased by defendant under the foreclosure proceedings.

In its answer defendant proceeded on the theory that the mortgage sued on was a part and parcel of a first mortgage for $2,000 authorized by the county court to which it was subject; and alleged that plaintiffs were parties defendant to the foreclosure action, and contested the same; that the judgment in foreclosure and all proceedings had thereunder were permitted to become final by plaintiffs; and that, as the judgment in foreclosure was rendered by a court of general jurisdiction, and the same appearing not to be void on its face, it was not subject to collateral attack and was now res judicata of the questions sought to be raised by plaintiffs in this action; and further pleaded estoppel by conduct in that plaintiffs had accepted the surplus proceeds arising from the foreclosure sales.

At the hearing the facts established were substantially as follows: About May 1, 1919, W. E. Fowler died intestate and seized of an estate consisting of 40 acres of land subject to a mortgage of $400. He left surviving him his widow, Margaret C. Fowler, and his children, the three plaintiff minors. In the estate the surviving spouse inherited an undivided one-third interest and the three children each an undivided two-ninths interest, although both parties refer to the quantity of each interest in the estate as being an undivided one-fourth, which clearly is erroneous since it is shown by the record that W. E. Fowler died intestate, and, therefore, the property descended to them under the law of succession, which fixes their interest therein in the proportions of one-third to the surviving spouse and the other two-thirds in equal parts to the three children, this being two-ninths to each child as indicated. The mother was appointed as the guardian of the minors. In June, 1919, the adult plaintiff acquired an adjoining 40-acre tract, and in July, 1919, she mortgaged that property to one Joseph T. Barnes for $1,456.50. On October 14, 1920, the guardian filed her petition in the county court of Tulsa county for authority to purchase for her wards the 40 acres acquired by her, and to mortgage the 80-acre tract for $2,000 to pay the purchase price, which was not stated, and to satisfy the $400 mortgage on the original 40. On the same date, she was authorized by the county court to make the purchase, and to execute a mortgage in the sum of $2,000 upon the 80-acre tract for the purposes set out in the petition. No transfer of the additional

property was made by the adult plaintiff to the minors. On the same date, for herself, and as guardian of the minors, the adult plaintiff executed a note for $2,000, and a mortgage on the 80 acres in security thereof to defendant, Humphrey Investment Company. Likewise, on the same date, she executed three $60 commission, notes to the investment company, the first being due December 1, 1921, and the others, one and two years thereafter, respectively, and, in security thereof, she executed the second mortgage involved in this action which was also security for the payment of monies thereafter advanced by the mortgagee in payment of the interest to mature on the $2,000 mortgage to which it was subject, if the mortgagors should suffer default therein, and all other liens that may attach to the property to the time of foreclosure of the second mortgage.

Upon default in the payment of the first interest due under both the first and second mortgages, the investment company paid the interest on the first mortgage indebtedness, this having been assigned to a third party, and thereupon elected to mature the second mortgage indebtedness.

On August 17, 1922, the mortgagee brought suit in foreclosure of the second mortgage against plaintiffs, and joined therein Joseph T. Barnes, who had entered into a contract of guaranty with the investment company to the effect that if the company would make the loan of $2,000 referred to and thereout pay his mortgage indebtedness of $1,456.50 against the adult plaintiff, he would guarantee the payment of the principal and interest thereof upon maturity in the event of default by the mortgagors.

Upon hearing of that case on December 18, 1923, the court found the issues for the mortgagee, and thereupon entered judgment against the mortgagors, the plaintiffs here, and the said Barnes for $466.85, with an attorney's fee for $50, and the cost of the action, and for foreclosure of the second mortgage, which in its details followed the usual form of judgments in foreclosure actions.

On September 10, 1924, the mortgaged premises were sold by the sheriff, under an order of sale pursuant to the judgment, to L. L. Humphrey, the president of the investment company, for the sum of $50, subject to the first mortgage, which sale, without opposition by plaintiffs, was confirmed by the court on October 11, 1924, and thereupon the sheriff, on October 14, 1924, conveyed the premises by deed to the purchaser.

In the meantime, on February 12, 1923,

the adult plaintiff acquired certain real property situated in the town of Owasso, Tulsa county. Defendant by proper proceedings levied upon this town property, which was sold on December 19, 1925, to L. L. Humphrey for more than enough to satisfy the deficiency judgment against plaintiffs, the surplus being paid into the registry of the court, and later, on July 27, 1927, drawn down by plaintiffs' attorney.

The court found from the evidence, pleadings, and the law of the case, that plaintiffs' petition to vacate the judgment in foreclosure and proceedings had thereunder should be denied, and thereupon rendered judgment for the defendant. Of the judgment plaintiffs complain on the principal ground that it is not supported by the evidence and is contrary to law.

To sustain the judgment in their favor, defendants in error say:

"The judgment of the district court of Tulsa county, Okla., ordering foreclosure of said mortgage and sale of said lands was a valid judgment and the only relief which plaintiffs in error could have against said judgment would be by way of appeal or motion to vacate said judgment on the grounds set forth in the statute."

Thereunder, they assert, to wit:

"Assuming that the order of the county court authorizing the loan was beyond the jurisdiction of the county court, the judgment of the district court in foreclosing the mortgage was a valid judgment and was not subject to collateral attack and the only relief which plaintiffs in error could have against the judgment would be by way of appeal or motion to vacate. The district court certainly had jurisdiction in the foreclosure action. There can be no question as to the jurisdiction of the district court over the parties to the action. Defendants were all regularly served and appeared in court, filed a number of motions and concluded by filing answers to the petition. All through the proceedings they were represented by an able and capable attorney, and it must be presumed that he protected their rights at every step of the proceeding. As to the subject-matter of the suit, certainly the district court had jurisdiction to foreclose a mortgage upon real estate situated within the jurisdiction of the court. A petition was filed which stated a cause of action for foreclosure against all of the defendants. The case was duly set for trial after issue was joined and a trial was had in which the plaintiffs in error participated through their attorney. One of the questions before the court for decision was whether or not the mortgage sued upon was a valid and subsisting lien against the premises owned by the defendants. The court decided that the mortgage was a valid lien. This was

within the jurisdiction of the court, and was the very matter which the court was called upon to decide. If the mortgage was not a valid lien, but, in fact, was void, then the district court of Tulsa county made an erroneous decision which could be reversed on appeal, or could be vacated by proper motion. Since the judgment was not attacked in the manner provided by law, it was a valid judgment. Plaintiffs in error did not appeal the case and did not move to vacate the judgment, so the judgment remained a valid judgment."

In support of that position, they rely on 33 C. J. 1078, par. 39, where it is said:

"Want of jurisdiction must be distinguished from error in the exercise of jurisdiction. Where jurisdiction has once attached, mere errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that purpose, will not render the judgment void, and until set aside it is valid and binding for all purposes and cannot be collaterally attacked. Error in the determination of questions of law or of fact upon which the court's jurisdiction in the particular case depends, the court having general jurisdiction of the cause and the person, is error in the exercise of jurisdiction. Jurisdiction to make a determination is not dependent upon the correctness of the determination made."

Of our own cases they cite Abraham v. Homer, 102 Okla. 12, 226 Pac. 45, where this court held, to wit:

"On collateral attack against the judgment of a court of record, when fraud is absent and all necessary jurisdictional facts existed in the court rendering the judgment attacked, the court on such collateral attack has no right to inquire, determine, and adjudge as to the existence in the original action of quasi jurisdictional facts or facts constituting a cause of action, and this is true even though upon the face of such judgment itself it appears that the court in the original action had erred both in fact and in law as to the existence of such facts and the right of the parties to the relief granted."

In so far as the cause at bar relates to the adult plaintiff, Margaret C. Fowler, it is to be observed that the attack on the judgment and sale proceedings had in the foreclosure action is based on nonjurisdictional grounds, and was brought long after the expiration of the term of the court in which they were had, and that on their face they appear to be regular and valid. In these circumstances, defendants' position in respect to the adult plaintiff is well taken, for it is an established rule that a judgment of foreclosure of a mortgage on real prop-

erty owned by an adult and minors as tenants in common, or where they are joint mortgagors, and the sale proceedings had thereunder, after the expiration of the term of the court at which such judgment and proceedings were had, are as to the adult mortgagor impervious to attack on nonjurisdictional grounds where such judgment and proceedings on their face appear to be regular and valid. Cudjo v. Harris, 119 Okla. 69, 248 Pac. 343.

We therefore eliminate from the case in hand, the adult plaintiff Margaret C. Fowler, and such part of the property involved which she owned in her own right, and confine our further consideration thereof only in so far as the foreclosure action affected the undivided two-thirds interest in the 40 acres held by the plaintiff minors in common.

Adverting to defendants' position above stated, as applied to plaintiff minors, defendants concede that, "if the mortgage was not a valid lien, but, in fact, was void, then the district court of Tulsa county made an erroneous decision which could be reversed on appeal or could be vacated by proper motion," but contend that as they "did not appeal the case and did not move to vacate the judgment," and that, "since the judgment was not attacked in the manner provided by law, it was a valid judgment." This theory of defendants, we think, is based on a misapprehension of the law here controlling.

By section 810, C. O. S. 1921, it is in part provided:

"The district court shall have power to vacate or modify its own judgments or orders, at or after the term at which such judgment or order was made: * * *

"Eighth. For errors in a judgment, shown by an infant in 12 months after arriving at full age, as prescribed in section 684."

Said section 684, Id., referred to in section 810, provides as follows:

"It shall not be necessary to reserve, in a judgment or order, the right of an infant to show cause against it after his attaining full age; but in any case in which, but for this section, such reservation would have been proper, the infant, within one year after arriving at the age of 21 years, may show cause against such order or judgment."

Of these provisions, in the Cudjo Case, this court said:

"By the provisions of Comp. Stat. 1921, sec. 810, the district courts of the state are granted power to vacate or modify their own judgments or orders at or after the term at which they are entered in certain instances specifically set forth in the subdi-

visions of the section. Subdivision 8 grants this power:

" 'for errors in a judgment, shown by an infant in 12 months after arriving at full age, as prescribed in section 684."

Section 684, Id., reads:

"It shall not be necessary to reserve, in a judgment or order, the right of an infant to show cause against it after his attaining full age; but in any case in which, but for this section, such reservation would have been proper, the infant, within one year after arriving at the age of 21 years, may show cause against such order or judgment."

In Sawyer v. Ware, 36 Okla. 139, 128 Pac. 273, in discussing the effect of subdivision 8 and section 684, considered together, this court said:

"The district court itself has the power to vacate or modify its own judgment for errors shown by an infant within 12 months after arriving at full age as prescribed in section 5935 (sec. 684), which covers those errors, which, under the old chancery practice, the infant would have had a right to show cause against, if the right had been reserved to him in the decree. Under the code practice this reservation is unnecessary, but the infant has that right nevertheless under the statute."

The old chancery practice above referred to, material to be considered in the instant case, and the rights which could be asserted by the infant thereunder, are thus stated in Daniell's Chancery Pleading & Practice, vol. 1, star page 167:

"In the case of a foreclosure, whether the legal estate be or be not vested in the infant, it is still usual to insert in the decree a clause allowing the infant six months after he comes of age, to show cause against the decree, unless the infant is a trustee. Yet, in cases of foreclosure, the only cause which can be shown by the defendant is error in the decree; and it has been held that he may not unravel the account, nor is he so much as entitled to redeem the mortgage by paying what is due."

"It seems clearly evident, therefore, that the power of the district court, at or after the term at which an order or judgment is rendered, to protect the rights of infant defendants by correcting errors therein which prejudice the rights of said infants, as that power was formerly exercised in chancery, was intended to be preserved by the above-quoted statutory provisions. It must also follow as a necessary corollary, that if a trial court errs as a matter of law in denying such relief to an infant defendant seeking such correction, this court, on proceedings in error, has power to review and correct such error."

It was thereupon held:

"Infants have reserved to them by statute (sec. 684, Comp. St. 1921) the same right to relief against erroneous orders and judgments as was formerly reserved to them in decrees in chancery, except that the time has been extended to 12 months after attaining full age, and by subdivision 8 of section 810, the courts are granted power to effectuate those rights at or after the term at which such erroneous orders or judgments are entered."

By section 812, C. O. S. 1921, in so far as the same is here applicable, it is provided:

"The proceedings to vacate or modify the judgment or order, on the grounds mentioned in subdivision * * * 8 * * *, of the second preceding section, shall be by petition, verified by affidavit, setting forth the judgment or order, the grounds to vacate or modify it, and the defense to the action, if the party applying was defendant. On such petition, a summons shall issue and be served as in the commencement of an action."

By force of that provision, the cause at bar in respect of the plaintiff minors must be regarded as a continuation of the foreclosure action, notwithstanding the fact that it, by the terms of the statute, partakes of the nature of an independent action, and upon filing thereof was designated by a case number different from that of the foreclosure case, and thus the cause is not subject to the restrictions that ordinarily obtain in an action where the parties seek to obtain equitable relief from a judgment brought as an original and independent action in the strict sense. We therefore pass to the merits of the case to determine the sufficiency of the grounds of complaint against the judgment appealed from as the same affects the interests of the plaintiff minors.

The evidence without dispute shows that the mortgage foreclosed covered property held by plaintiff minors in common, and was given by the guardian to secure the payment of obligations aggregating $180 contracted by her with the defendant investment company, and such other sums of money as may thereafter be advanced by the mortgagee in payment of the interest on the first mortgage of $2,000 placed on the same property to which it was subject, and any other lien that may attach to the property to the time of foreclosure, and that the mortgage contract was executed without the authority of the county court in which the guardianship proceedings were pending, as provided by section 1260, C. O. S. 1921. That section provides as follows:

"The county judge may, upon verified petition supported by sufficient evidence showing that the best interest of the owners

of the real estate affected requires it, by an order, grant authority to the administrators or executors of the estate of deceased persons or to the guardians of the estates of minors, incompetents or insane persons, to enter into contracts for and to renew or extend the time of payment of any mortgage or lien upon the real estate of such estate or ward, or to execute a new mortgage for the purpose of paying off and securing the release of any such mortgage or lien, provided that in no case shall such authority be granted to mortgage, or contract for the renewal or extension of any mortgage for an amount greater than may be necessary to pay liens existing at the time such order is granted including principal, interest, taxes and such reasonable expense as may be incident to perfecting such renewal or new mortgage."

When the mortgage here involved is measured by the rule of the statute, we think it fails to meet the requirements of such an instrument upon which a judgment of foreclosure may effectively operate, notwithstanding that it may be said that perhaps there was a lien liability against the interest of each minor to the extent at least of the interest obligation incurred by the guardian arising out of the original mortgage indebtedness of $400 apparently included in the $2,000 mortgage, which chiefly was given for the guardian's personal mortgage obligation to Barnes.

A mortgage similar in its legal phases to the one here in question was considered in Howard v. Bryan, 133 Cal. 257, 65 Pac. 462, where the law, in substance and effect, was also similar to our section 1260. It was there held:

"Under Code Civ. Proc. sec. 1578, providing that the court may authorize a guardian of a minor to mortgage the property of his ward to pay or renew some lien thereon, an order authorizing a mortgage of the ward's property wholly or in part to discharge a lien on the property of the guardian is invalid.

"Under Code Civ. Proc. par. 1578, providing that the property of a minor may be mortgaged to pay or renew a lien thereon, where there are several minors owning undivided interests in the same property, each subject to a lien, the interest of each minor cannot be mortgaged to secure the aggregate of all their debts, but each must be bound only for his part thereof."

Addressing itself to the question, the court used this language:

"The law cannot be construed to authorize the mortgage of a minor's estate to pay any debt but his own. It must be such a mortgage as he can discharge by paying what he is individually bound for, and such as will admit of a redemption by the payment of that which is due from him on his own account. In this case, the power of the court was exceeded not only in attempting to mortgage the interest of the five minors to secure a sum in excess of their aggregate indebtedness, but also in the attempt to mortgage their separate interests for their aggregate debt. However advantageous it may have seemed in this instance to pursue that course, the proceeding cannot be sustained without establishing a dangerous precedent, from which serious abuses would be certain to flow."

In a concurring opinion, this language was used:

"The property of one minor may not be incumbered with a lien in aid of his fellow ward, nor in aid of anybody else. At all times and under all circumstances that property is to be wisely and economically administered for the benefit of the minor alone. The proceedings of a court and of a guardian with a ward's property are not, and can never be, adversary in their nature. There are well-defined constitutional limitations to the power of the court in dealing with the property of the ward. It may change its form by sale; it may impose a lien upon it as by mortgage; it may authorize the expenditure of parts of it when necessary; but, when it acts, it acts only for the benefit of the ward, and not for the benefit of any third person. In this case, the mortgage authorized by the court was a blanket mortgage for the full amount of $9,500; in other words, there was, by the mortgage, a lien imposed upon the real property of each minor for the full amount of $9,500, notwithstanding the fact that the amount chargeably against the property of minor A. might have been $100, against minor B. $500, and so on. The legal consequences which follow such a mortgage are material. No minor could release or redeem his own property from the mortgage debt without paying the full amount of it. Each minor's property, therefore, is held, not alone for the undetermined amount of his own obligation, but for the aggregate amount of the obligations of all the others. Such a mortgage, I think, is void. The court, in authorizing a mortgage upon the property of a ward, can only authorize it and impose a lien upon the ward's property for the amount of money to be raised for the benefit of that ward; and, if there be more than one ward, as here, owning undivided interests in a tract of land in common, either separate mortgages must be ordered, or the mortgage must specify the amount of the lien and charge against the interest of each minor, and provide for the discharge of the lien as to each particular ward's property upon the payment of that amount."

From these premises it must follow that the judgment of foreclosure and the sale proceedings had thereunder, in respect to the plaintiff minors, clearly were erroneous,

and that when the facts of nullity of the mortgage foreclosed were brought to the attention of the court in the cause at bar, its judgment of denial of the relief sought from the judgment of foreclosure and sale proceedings also was erroneous, and thus it was subject to the complaint made thereagainst as being without support both in point of fact and of law.

This conclusion renders it unnecessary to consider the other points raised by defendants, namely, res judicata and estoppel by conduct also relied on by them, as, in the one, the doctrine is without application in the state of the case in hand, and, in the other the conduct relied on had application only to the adult plaintiff as the, surplus proceeds arose from the sale of her property in which the plaintiff minors had no interest.

For the foregoing reasons, therefore, the judgment of the district court as to the adult plaintiff, Margaret C. Fowler, is affirmed The judgment as to the plaintiff minors, Jessie L. Fowler, Edwin v. Fowler, and Mary F. Fowler, is reversed, and the cause as to them is remanded, with directions to the trial court to vacate the judgment and enter a judgment setting aside, vacating, and holding for naught the judgment and the sale proceedings had in the foreclosure action in so far as the same affected the undivided two-thirds interest of the named minors held in common by them in the original 40-acre tract there involved, and for such further proceedings as may be necessary in the protection of their interests therein.

REID, HERR, EAGLETON, and DIFFENDAFFER, Commissioner, concur.

By the Court: It is so ordered.