LATIMER v. VANDERSLICE et al.

No. 26672. Sept. 29, 1936.

Rehearing Denied Dec. 22, 1936.

V. P. Crowe, J. C. Powell, Paul Dudley, and W. E. Latimer, for plaintiff in error.

Ledbetter & Ledbetter, for defendants in error.

PER CURIAM. The parties will be referred to as they appeared in the trial court.

On the 12th day of October, 1915, this court rendered an opinion in Pierce v. Ellis, 51 Okla. 710, 152 P. 340. The action involved lands left by Nannie Rogers, a Chickasaw Indian, whose husband was John Rogers, and it is stated that the only question involved was, Did the surviving husband upon the death of the wife take any estate by curtesy?

The opinion continues:

"So far as this court is concerned, we do not consider the question now an open one.

"In the case of Johnson v. Simpson, 40 Okla. 413, 139 P. 129, the syllabus is as follows:

"'(1) Upon the passage and approval of Act May 2, 1890, c. 182, 26 St. at L. 94, which extended over and put in force in the Indian Territory the common law of England as adopted by the state of Arkansas, with the proviso excepting Indians and their estates, and Act June 7, 1897, c. 3, 30 St. at L. 83, which provided that such laws should apply to all persons of the Indian Territory, irrespective of race, and the Curtis Act June 28, 1898, c. 517, 30 St. at L. 495, which provided that the laws of Indian tribes should no longer be enforced, title by curtesy consummate, as it existed in the state of Arkansas, attached, in favor of the husband, to all lands of which the wife became seized during coverture.

"'(2) Under the curtesy consummate, as it existed in the state of Arkansas, whatever interest the husband acquired in the lands of his wife, by marriage, could be swept away by her subsequent conveyance or devise of them.'

"The United States District Court for the Eastern District of Oklahoma has announced the same principle in Armstrong v. Wood et al. (C. C.) 195 Fed. 137.

"The Johnson Case, supra, involved allotted lands in Seminole Nation; the Armstrong Case, supra, lands in the Creek Nation. The land in controversy here is a Chickasaw allotment; but, so far as we can see, there is nothing in the laws and treaties peculiarly applicable to the Choctaw and Chickasaw Tribes that would require a distinction, or except the lands of those Nations from the operation of the rule announced in the above cases. In fact, it would appear that more reasons could be given to take the Creek lands out of the rule than to take the Chickasaw and Choctaw lands out of it."

Subsequent to this opinion two cases were decided by the Supreme Court of the United States on appeal from this court. The first one was Marlin v. Lewallen, 276 U. S. 58 (Condren v. Marlin, 113 Okla. 259, 241 P. 826), and the second, Longest v. Langford, 114 Okla. 50, 252 P. 569, Id., 276 U. S. 69. Marlin v. Lewallen, supra, involved certiorari to an opinion of the Supreme Court of Oklahoma sustaining a claim to an estate by the curtesy in lands allotted and patented to a Creek woman. Justice Van Devanter states the case as follows:

"The lands were allotted and patented under two agreements between the United States and the Creek tribe which will be described later on. The allottee was a married woman of Creek blood and was enrolled as a member of the tribe. Her husband was a white man without tribal enrollment or membership. She died intestate November 29, 1904, while seized of the lands, and was survived by her husband, by issue of her marriage with him and by issue of a former marriage, all of the issue being Creeks and capable of inheriting the lands.

"Two questions are pressed on our attention: Did the laws then applicable to the Creek lands provide for an estate by the curtesy? If so, did they extend it to a husband who was not a Creek where there were Creek descendants capable of taking the full title?"

After a review of the history of the relations of the United States and the Indian tribe the opinion states:

"The Arkansas law of curtesy was among the laws so extended. But that did not make it presently applicable to the Creek lands, they being then in tribal ownership. Such applicability would come only if and when individual ownership was substituted for tribal ownership. The agreements provided for such a change, and had they stopped there that law would have become applicable. But instead of stopping there they proceeded to deal, among other things, with the taxation, alienation and devolution of the lands. Whether these further provisions in effect excluded curtesy under that law is one of the questions in this case. **Of course, it is a question of construction.** (Emphasis ours.)

"In taking up this question it must be remembered that the agreements were between the United States and a dependent Indian tribe then under its guardianship, and therefore that they must be construed, 'not according to the technical meaning of their words to learned lawyers but according to the sense in which they would naturally be understood by the Indians.'"

Longest v. Langford, supra, follows the opinion in Marlin v. Lewallen, supra, and applies the same rule to lands allotted to Choctaw women. The headnote prepared by the reporter of the case states that it applies to Choctaw and Chickasaw Indians. Pierce v. Ellis, supra, is not cited in the opinion. Both opinions were decided February 20, 1928.

On the 31st day of December, 1934, the plaintiff appeared in the district court of Murray county, and in the former case of Pierce v. Ellis, which was the judgment appealed from to this court, and filed a motion to vacate the judgment rendered on the 29th day of April, 1913, on the ground that said judgment was void, and cited as his author-

ity therefor the two opinions of the Supreme Court of the United States mentioned above.

For the purpose of this opinion we shall treat the appeal as one from the refusal of the trial court to vacate the original judgment in Pierce v. Ellis, supra, and hold that the appeal is regularly taken from the order refusing to vacate the judgment therein rendered. We shall also hold that, if necessary, the motion to recall mandate and vacate the judgment and opinion of this court in Pierce v. Ellis, supra, is properly filed and considered.

A large number of authorities are cited by plaintiff to sustain his position that the judgment is void. Many of these cases, such as Pettis v. Johnston, 78 Okla. 277, 190 P. 681; Ex parte Parnell, 19 Okla. Cr. 273, 200 P. 456, and Condit v. Condit, 66 Okla. 215, 168 P. 456, deal with the lack of jurisdiction either of person or of the subject-matter. Pettis v. Johnston, supra, declared a judgment void founded upon service not in compliance with the statutory requirements which was reflected by the judgment roll. Condit v. Condit, supra, declared a judgment void where proper service of a minor was not shown, and Ex parte Parnell, supra, declared a judgment of conviction of a minor properly under the supervision of juvenile powers of the county court void. The following cases involve these principles: Roth v. Union National Bank, 58 Okla. 604, 160 P. 505; Jefferson v. Gallagher, 56 Okla. 405, 150 P. 1071; Standard Savings & Loan Ass'n v. Anthony Wholesale Gro. Co., 62 Okla. 242, 162 P. 451; Seal v. Banes, 168 Okla. 550, 35 P. (2d) 704; Cummings v. Inman, 119 Okla. 9, 247 P. 379; Southwestern Surety Ins. Co. v. Farriss, 118 Okla. 188, 247 P. 392; Bell v. Fitzpatrick, 53 Okla. 574, 157 P. 334; Brewer v. Dodson, 60 Okla. 81, 159 P. 329; Title Guaranty & Surety Co. v. Foster, 84 Okla. 291, 203 P. 231; Appeal of Sim's Estate, 162 Okla. 35, 18 P. (2d) 1077; Sims v. Billings, 162 Okla. 51, 18 P. (2d) 1084; Sharp v. Sharp, 65 Okla. 76, 166 P. 175; Eysenbach v. Naharkey, 114 Okla. 217, 246 P. 603; Coleman v. Battiest, 65 Okla. 71, 162 P. 786; Arnold v. Joines, 50 Okla. 4, 150 P. 130; Rock Island Imp. Co. v. Pearsey, 133 Okla. 1, 270 P. 846; Burris v. Straughn, 107 Okla. 299, 232 P. 394; Zahn v. Obert, 60 Okla. 118, 159 P. 298; First State Bank v. Lattimer, 48 Okla. 104, 149 P. 1099; Farmenter v. Ray, 58 Okla. 27, 158 P. 1183; Jackson v. Carroll, 86 Okla. 230, 207 P. 735; Condren v. Marlin, 113 Okla. 259, 241 P. 826; Oder v. Oder, 149 Okla. 63, 299 P. 202; Fowler v. Humphrey Inv. Co., 142 Okla. 221,

286 P. 867; Brown v. State National Bank, 133 Okla. 173, 271 P. 833. These cases are all cited by the plaintiff in the brief.

Plaintiff relies upon Jefferson v. Gallagher, supra, and the language used therein. That was a case in which judgment was rendered without the jurisdiction of the person. He likewise relies upon Southwestern Surety Ins. Co. v. Farriss, supra, and therein the parties stipulated that the bondsmen might be subrogated to the interest of the ward on a guardian's bond. A judgment based thereon was declared void. Each case could be likewise distinguished, but it is unnecessary to continue the analysis. Plaintiff next cites four cases under the rule that the affirmance of a void judgment by the Supreme Court adds nothing to such validity. The principle seems elementary, but we shall examine the cases cited. In Pioneer Land Co. v. Maddux (Cal.) 42 P. 295, there was a failure to post notices the required length of time in a sale of land for delinquent taxes. The judgment, though affirmed, was declared void. In Ball v. Tolman (Cal.) 67 P. 339, the plaintiff obtained a judgment against the defendant under a statute providing for a penalty in certain cases, and after a judgment was rendered and while proceedings to review the judgment were being perfected, the Legislature repealed the statute. After the repeal of the statute, subsequent to the judgment, the Supreme Court affirmed the judgment. The Supreme Court of California in a collateral attack, after the attempted enforcement of the judgment in the trial court, held the appeal effective and for the benefit of the judgment debtor.

Chambers v. Hodges, 23 Tex. 105, involved the disqualification of a judge clearly incompetent to sit in the trial of the cause under the plain statutory terms as denominated by the Legislature of Texas.

In Bilby v. Malone, 130 Okla. 217, 266 P. 760, this court said:

"The district or superior courts of this state are without jurisdiction to enter a valid judgment divesting a full-blood Indian of title to inherited, allotted, restricted Indian lands by entering a decree quieting title in a party asserting title to such lands, under void conveyance executed in violation of a federal statute prescribing the manner by which title may be acquired in such lands."

In the opinion it is stated:

"Plaintiffs in error rely principally upon the case of Berry v. Winstock, 102 Okla. 187, 228 P. 948, to support them in this cause. While there are some statements and expressions in that case that tend to support

504

plaintiffs in error, but from an examination of the entire case and the facts therein we do not consider the decision in that action controlling here or to lay down a different rule from that in a number of other decisions in the court. In that case (Berry v. Winstock, supra), the facts were that, in a previous action between the same parties, which action involved the validity of a guardian sale of Indian lands, which former action was appealed to the Supreme Court, the court held the proceedings sufficient and the sale valid; in the last action (102 Okla. 187, 228 P. 948), supra, the court decided and held that the former action was a bar to the latter, and that the plea of res judicata in the latter action was good. It would appear that the court had jurisdiction of the subject-matter and parties and a right to determine the validity of such guardian sale.

"The question in this cause is whether the superior court of Tulsa county had jurisdiction and authority to render the judgment decreeing the conveyance made by the heirs of the allottee valid without the approval of the Secretary of the Interior or county court having jurisdiction of the settlement of the estate of such deceased allottee. If the superior court did not have jurisdiction, the judgment is void, and the plea of res judicata in the present action cannot be sustained."

Further in that opinion we said:

"In the case of Goodrum v. Buffalo, 162 F. 817, 89 C. C. A. 525, it was said:

" 'Notwithstanding the general rule that a judgment between parties sui juris, where the court has jurisdiction over the subject-matter and the parties, is conclusive of every question of fact and law in contestation, and cannot be attacked in a collateral proceeding, a judgment rendered by the United States court in the Indian Territory, under a stipulation between a Quapaw Indian and a white man, submitting, under the provisions of local law, for decision, the question of the power of such Indian allottee, or his heir, to convey his or her allotment within the 25-year period of limitation under Act Cong. March 2, 1895, c. 188, 28 Stat. 907, adjudging the validity of such conveyance, held to be invalid, when interposed to defeat the action of ejectment by the Indian heir against the prevailing party in such proceeding.' "

And quoting from Miller v. Tidal Oil Co., 106 Okla. 212, 233 P. 696, it was further said:

"A conveyance of allotted restricted Indian lands, made in violation of a federal statute authorizing the alienation of such lands, is against public policy and absolutely void, and in no manner can any right, title, or interest in such lands be acquired under such a conveyance.

"A judgment against a minor Creek freedman, quieting title to premises constituting his allotment in favor of grantees claiming title under a deed executed by such minor, is void, and such judgment cannot be validated by an order of the same court denying a motion to vacate the same, even though such minor has reached his majority at the time such motion is filed and order made, and neither the void judgment nor the order denying the motion to vacate can operate as an estoppel under a plea of res judicata in a subsequent action between the same parties."

In Rogers v. Duncan, 57 Okla. 20, 156 P. 678, the court held that a judgment assessing personal property without proper notice was void and could be collaterally attacked. Therein is recognized the general rule that where courts have once acquired jurisdiction of the parties and the subject-matter, they have a right to decide every question, and that the judgment, however erroneous, cannot be collaterally assailed, and refused to apply the general rule to the lack of notice to assess the personal property for the reason that it did not come within the rule of erroneous judgment. The general rule suggested in Rogers v. Duncan, supra, and cited in Bilby v. Malone, supra, in the quotation from Goodrum v. Buffalo, is of almost universal recognition. It is especially recognized in a case where a judgment has been rendered and finally passed upon by the court of last resort. Courts permit collateral attack upon judgments only when it appears that the court rendering such judgment was without jurisdiction to render that judgment. If it is merely an erroneous judgment, it will not be disturbed on collateral attack. Gray v. Gray, 57 Okla. 667, 157 P. 730; Robinson v. Anderson, 88 Okla. 136, 212 P. 121; Gillespie v. Wilson, 101 Okla. 62, 221 P. 82; Johnson v. Ray, 101 Okla. 160, 222 P. 667; Bucy v. Corbin, 101 Okla. 124, 223 P. 134; Ahrens v. Commercial National Bank of Muskogee, 100 Okla. 250, 229 P. 237; Fowler v. Marguret Pillsbury General Hospital, 102 Okla. 203, 229 P. 442; Griggs v. Brandon, 132 Okla. 180, 269 P. 1052; Bledsoe v. Green, 138 Okla. 15, 280 P. 301; Peter v. Mozier, 138 Okla. 288, 281 P. 141; and Billy v. LeFlore County Gas & Electric Co., 146 Okla. 227, 293 P. 1009.

We call especial attention to the case of Peter v. Mozier, supra, for the reason that the declaration that the judgment based upon a mistake of law is no less conclusive and final was made in a set of circumstances somewhat similar to the one at bar. The question there was the right of dower, while the question presented herein is the right of

curtesy. In Billy v. LeFlore County Gas & Electric Co., supra, in the third paragraph of the syllabus it is held:

"An action brought for accounting for gas taken from certain premises pursuant to a final judgment entered in another cause between the same parties declaring the purported lease under which the defendant was operating for oil and gas on the premises to be void, does not disclose on its face that plaintiffs' claim is without equity, even though subsequent controlling decisions in this jurisdiction establish rules of law under which the decree declaring the oil and gas lease to be void would not have been sustained."

The Supreme Court of Utah had this matter before it in Silva v. Pickard, 14 Utah, 245, 47 P. 144, in a case similar to the one at bar, where the judgment attacked collaterally had been appealed to the Supreme Court of that state and affirmed. In that case it is said:

"The rule invoked upon behalf of the respondents is stated by Mr. Justice Field, now of the Supreme Court of the United States, speaking then for the Supreme Court of California, in the case of Leese v. Clark, 20 Cal. 417, in the following language: 'A previous ruling of the appellate court upon a point distinctly made may be only authority in other cases, to be followed and affirmed, or to be modified and overruled, according to its intrinsic merits. But, in the case in which it is made, it is more than authority. It is a final adjudication, from the consequences of which the court cannot depart, nor the parties relieve themselves. Such has been the doctrine of this court for years, and, after repeated examinations and affirmations, it cannot be considered as open to further discussion. Dewey v. Gray, 2 Cal. 377; Clary v. Hoagland, 6 Cal. 687: Gunter v. Laffan, 7 Cal. 592; and Davidson v. Dallas, 15 Cal. 82. Nor is the doctrine peculiar to this court. It is the established doctrine of the Supreme Court of the United States, and of the Supreme Courts of several of the states '(citing, among other cases, Sibbald v.' U. S., 12 Pet. 491; Washington Bridge Co. v. Stewart, 3 How. 413). And the reasoning of the doctrine is obvious. The Supreme Court has no appellate jurisdiction over its own judgments. It cannot review or modify them after the case has once passed, by the issuance of the remittitur, from its control.' The rule is also stated as follows: 'Where a decision is given by a court of ultimate appeal in a case, the decision must be regarded as conclusive in that particular case. * * * In the same case any ruling is final; in a different one it is only the precedent established: and, while the courts are reluctant to disregard previous decisions in similar cases, there may be a variety of reasons which will cause them to

do it. This general distinction exists, and must be recognized, no matter how palpable the error or unfortunate the circumstances. It is one over which the court itself has no control.' 23 Am. & Eng. Enc. Law, 33, citing many other cases. No doubt is raised but that such is the rule, but it is said to be inapplicable to this case. Is it applicable to the decision of an intermediate court of appeal, as well as to one of a court of ultimate appeal? An examination of the principles upon which the doctrine of the law of the case is found furnishes an answer to the inquiry. 'Appellate courts have not, in general, the power to review their own decisions after the time for rehearing has expired. The exercise of such a power involves original jurisdiction, and appellate courts are limited to the review of the judgments of inferior tribunals. The doctrine of res adjudicata, and the principles upon which it rests, apply, therefore, to appellate judgments. The principles and questions adjudicated on an appeal are binding, and will not be reviewed as between the same parties and their privies on a subsequent appeal in the same cause. The law so declared controls all further proceedings in the cause until the termination.' 2 Enc. Pl. & Prac. 373. 'Appellate power is exercised over the proceedings of inferior courts, not on those of the appellate courts. The superior courts have no power to review their decisions, whether in a case at law or in equity. * * * No principle is better settled, or of more universal application, than that no court can reverse or annul its own final decrees or judgments for errors of fact or law, after the term in which they have been rendered, unless for clerical mistakes, * * * or to reinstate a cause dismissed by mistake * * * from which it follows that no change or modification can be made which may substantially vary or affect it in any material thing. Bills of review in cases of equity, and writs of error, coram vobis at law, are exceptions.' Sibbald v. U. S., 12 Pet. 488. '* * * The final judgment of the highest court upon a question of law arising between the parties to an action on a given state of facts establishes the rights of the parties to that controversy, and is a final determination thereof, and, like a final judgment in any other case, estops the parties thereto from afterwards questioning its correctness.'"

We have discussed the same rule under the law of the case. Oklahoma City Electric, Gas & Power Co. v. Baumhoff, 21 Okla. 503, 96 P. 758.

Returning, therefore, to the opinion rendered in Pierce v. Ellis, supra, and the subsequent opinions of Justice Van Devanter in Marlin v. Lewallen and Longest v. Langford, supra, the language does not suggest that the Oklahoma courts were without jurisdiction. The very opinions confirm such jurisdiction. The learned writer used the language, "of

506

course, it is a question of construction." Our courts had construed it one way; the Supreme Court of the United States, a number of years later, construed it a different way. Subsequent to these opinions judicial construction forces this court to abide by the opinion of the Supreme Court of the United States. But the finality of the opinion in Pierce v. Ellis, supra, is not disturbed. In Union Indemnity Co. v. Saling, 166 Okla. 133, 26 P. (2d) 217, in discussing this principle, the court said:

"We next address ourselves to a consideration of the power of the commission to render the particular decision rendered. A judgment or decree that is merely irregular or erroneous by reason of an improper application of a rule of law is not void provided it is within the issues tendered to the court by the pleadings. Smith v. Finger, 15 Okla. 120, 79 P. 759; Strange v. Armstrong, 123 Okla. 216, 252 P. 1099. However, if the court or tribunal goes outside the issues presented by the pleadings and decides a matter not tendered by the pleadings, its decision on such issue is absolutely void. Standard Savings & L. Ass'n v. Anthony Wholesale Gro. Co., 62 Okla. 242, 162 P. 451, L. R. A. 1917D, 1029; Nero v. Brooks, 116 Okla. 279, 244 P. 588."

From the above authorities, therefore, it becomes evident that the finality of the opinion in Pierce v. Ellis, supra, cannot be attacked. The motion to vacate was properly overruled, and the judgment of the trial court is affirmed. The motion to recall mandate in the original case of Pierce v. Ellis, supra, is also denied.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, CORN, and GIBSON, JJ., concur.